## DREW *et al.* *v.* THE STATE.

1. It may be stated as a general rule, that, if a trespass on person or property amounts to a felony, the killing of the trespasser will be justifiable, if necessary, in order to prevent it; but a trespass which amounts to a misdemeanor only will not justify a killing.

(*a*) The doctrine of reasonably apparent necessity, as the equivalent of actual necessity, is to be taken in connection with this rule.

2. If an owner of property is authorized to use reasonable force for its protection, or recaption from a fleeing thief, and does no more, and such thief resists the owner with force, his conduct may be such as to place him in the position of the aggressor, and to authorize the owner to defend himself by the use of further reasonable force.

3. If one steals the property of another and flees, and the owner, upon learning later of the theft, pursues and overtakes him at a distance from the place where the larceny was committed, and without any effort to retake possession by peaceable means and without any necessity to take life, fires upon the thief and kills him, such a killing is not justifiable, though the theft be a felony.

(*a*) The right to arrest an escaping felon, under the Penal Code (1910), § 921, involves a different principle from mere recaption of property.

(*b*) There was no error in charging in accordance with the principles above ruled, the presiding judge having instructed the jury as to the law of voluntary manslaughter, as well as that of murder and justifiable homicide.

4. While the charge of the court was not free from criticism, nothing in it requires a reversal of the judgment.

AUGUST 16, 1911.

Indictment for murder. Before Judge Maddox. Chattooga superior court. May 2. 1911.

*P. D. Wright* and *W. M. Henry,* for plaintiffs in error.

*H. A. Hall, attorney-general,* and *J. W. Bale, solicitor-general,* contra.

LUMPKIN, J.    Sam Drew and Charley Smith were convicted of the murder of Love Dean.    There was but one eye-witness, who gave substantially the following account of the transaction: The defendants were at a dance at night.    It was reported to Drew that his mule and buggy, which had been left standing near by, were gone.    He and Smith and the witness gave chase.    They overtook the mule and buggy about a mile and a quarter from the starting point.    The buggy was then turned across the road, and standing still.    A man was sitting in it, who afterward appeared to be Dean. Drew called to the person in the buggy to stop.    Drew asked, "Who in the hell is that?"    The man in the buggy answered, "Me." When they ran up to the buggy, he reached back, "this way" (the witness illustrating).    He was not trying to strike Drew or Smith, or do anything to them to cause them to shoot him.    Drew fired at him twice with a pistol.    The decedent sprang from the buggy and ran.    Drew fired a third shot.    He said something to Smith, which sounded like "hand me."    Smith ran around the buggy and fired a pistol at the decedent, who fell.    Each of the defendants said he thought he had fired the fatal shot.    They did not go to the place where the decedent fell.    When the witness asked Drew who the decedent was, Drew said that it was Dean.    Drew and Smith told the witness not to say anything about the killing, but that, if it went to court, they should all tell the same tale and say that they found the mule and buggy at a certain telegraph-pole, which was about a quarter of a mile from the scene of the homicide, and that they went no further than that point.    After the shooting they went back to the dance, and remained there for a while. Next day the dead body was found, with three wounds upon it, one in the back of the head, which was fatal, one in the side and one in the arm.    The sheriff testified that Drew said "he killed Love Dean on account of his stealing his mule and buggy, or that he and Charley Smith had killed him."    This was said in the presence of Smith.    The latter said that he did part of the shooting, and that he shot the decedent because he had two quarts of whisky in the buggy, which the decedent carried away, "and that he shot him because he got his whisky."    The defendants introduced no

evidence. Drew's statement did not materially conflict with the evidence, except that, when he asked who it was in the buggy and the person in it answered "me," the statement added: "at the same time throwing the lines over the dashboard, and reaching down in the buggy; and as he came up, I shot. I thought he was going to do something to me. I knew he was a horse thief; had no other thought; did not know it was Love at all. If I had known that it was Love, I would not have shot." The statement of the defendant Smith included the following: "He throwed the lines over the dashboard, and reached down, and jumped up. When he did that, Sam shot, and then he turned and jumped over the right wheel of the buggy, and then ran, and Sam shot twice more. I had two quarts of whisky in the buggy, and I thought he had the whisky, and I was going to stop him to see who it was. I thought he was a horse thief, going through the country stealing, and I shot. But did not shoot to hit him, but to stop him. I did not know who it was, and I was mad and bad excited. If I had known it was Love, I would not have done it for anything in the world." The defendants were convicted of murder, and recommended to life imprisonment. After the refusal of a new trial, they excepted.

The charge of the court was not altogether exact in some particulars. But, under the evidence and in the light of the entire charge, we do not think a reversal should be granted. There was ample evidence to authorize a charge on the subject of conspiracy or concert of action in the commission of the homicide. The killing of a human being in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors, "by violence or surprise, to commit a felony on either," is justifiable homicide. Penal Code (1910), § 70. It has been held, that, if a trespass on the person or property of another amounts to a felony, the killing of the trespasser will be justifiable if necessary in order to prevent it, but that a trespass which amounts only to a misdemeanor will not justify a killing; and also, that the right of an owner to protect his property against a robber does not end at the moment that the taking is accomplished, so as to prevent the owner, before the robber has gotten away with the article taken, and while the crime is still progressing in his presence, from protecting his property. *Crawford* v. *State,* 90 *Ga.* 701 (17 S. E. 628, 35 Am St. R. 242).

The subject of recaption of property by the owner of it from one wrongfully taking it and the limitation of the use of force in connection therewith has given rise to much learned discussion and the drawing of various distinctions, resulting in some differences. The facts of the case before us do not require a discussion of these distinctions and differences. It may be said that the taking of human life by a private person is a grave matter, and is generally to be justified only as an actual or reasonably apparent necessary defensive or preventive measure against a trespass amounting to a felony. Sometimes a lawful act by an owner of property may be met by force on the part of a thief or trespasser, so as to authorize counterforce to be used. There may be exceptional facts, as indicated in the *Crawford* case, supra. Instructive discussions of the subject will be found in 1 Bishop's Crim. Law (8th ed.), §§ 849, 853; Wharton on Homicide, §§ 524, 525; Storey *v.* State, 71 Ala. 329; Note to Barnes *v.* Martin, 82 Am. D. 670, 673 (15 Wis. 240); Weaver *v.* State, 19 Tex. App. 547 (53 Am. R. 389); Commonwealth *v* Donahue, 148 Mass. 529 (20 N. E. 171, 2 L. R. A. 623, 12 Am. St. R. 591); Gyre *v.* Culver, 47 Barb. 592; Waterman on Trespass, § 167; State *v.* Dooley, 121 Mo. 591 (26 S. W. 558); McClelland *v.* Kay, 14 B. Mon. 103, 106 et seq.; Gray *v.* Combs, 7 J. J. Marshall, 478 (23 Am. D. 431); State *v.* Moore, 31 Conn. 479 (83 Am. D. 159); 1 Horr. & Thomp. Crim. Def. 891, 900.

In the case before us, the presiding judge charged that if the defendants were in pursuit of their property, or that of one of them, believing it to have been stolen, they would have had the right to use just such force as was necessary to recover the property and to arrest the party in possession of it, but could not shoot such party in revenge; that if, when the defendants approached the buggy, the party in possession of it made a demonstration as if seeking to get hold of a weapon, or in some other way was threatening an attack on the defendants, and his conduct was such as to excite their fears, as reasonable men, that their lives were in danger, or that some serious bodily harm was about to be committed on them, or either of them, and they acted under the influence of those fears and not in a spirit of revenge, and shot and killed the decedent, they should be acquitted. He also charged as to the possibility of reducing the homicide from murder to manslaughter by reason of passion arising from the conduct of the

decedent in taking the property, or his conduct when the defendants approached him. The defendants thus got the benefit of a charge as favorable as they could expect on the theories arising from the evidence and statements. Whether or not there was any inaccuracy in charging as to reducing the killing to manslaughter if Drew believed he had to shoot to recover his property, we do not think there should be a reversal. Drew's own statement was that he thought the man in the buggy was "going to do something to" him, and he shot. The evidence did not indicate any apparent necessity to shoot merely to recover the property (if that would suffice), or to arrest a felon, nor did Drew so claim.

Nor, under the particular facts of this case, do we think that a new trial should be granted on account of the charge as to the possible forms of verdict if the jury believed the defendants acted in concert, or if they did not. If two persons pursued a third as a thief having property of each of them, with the common purpose of overtaking him and recapturing the property, and upon overtaking him both fired at him with pistols as he ran, and he was killed, this presented no case of separate and independent assaults, and the rule in such cases, as laid down in *Walker* v. *State*, 136 *Ga.* 126 (70 S. E. 1016), did not apply. The charge may have been inaccurate in some respects, but was, in its entirety, as favorable to the defendants as the evidence and statements authorized, perhaps more than they could have required. No new trial should be granted.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*