[Crim. No. 20258. First Dist., Div. One. Dec. 18, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RUBEN SIMON QUESADA, JR., Defendant and Appellant.

COUNSEL

Sanders, Dodson & Rives and Ronald P. Rives for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GRODIN, J.**—Defendant's house was burglarized during the night while no one was at home. Two days later, under circumstances we shall describe, defendant shot and killed the burglar. In response to charges of murder with use of a firearm, defendant claimed justification under Penal Code section 197, subdivision 4, which provides that "[h]omicide is...justifiable...When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed,...." By case law, that justification exists "only where the felony committed is one which threatens death or great bodily harm." (*People* v. *Piorkowski* (1974) 41 Cal.App.3d 324, 329 [115 Cal.Rptr. 830].) The trial court instructed the jury that it was its duty to determine whether the burglary met that description, taking into account the surrounding facts. The jury, apparently rejecting the asserted justification defense, found defendant guilty of involuntary manslaughter and found also that he used a firearm in the commission of that offense. The trial court suspended imposition of sentence, and defendant was admitted to probation conditioned on confinement in the county jail for one year.

On appeal, appellant contends that burglary at night is *necessarily* a felony which threatens death or bodily injury for purposes of determining the justifiability of deadly force used by a citizen to apprehend the burglar, and that the trial court erred in not so instructing the jury. Alternatively, he contends that the firearm use finding should be stricken because such use was an element of the involuntary manslaughter offense which he was found to have committed. We are not persuaded by either contention for the reasons which follow, and therefore affirm.

*The Factual Setting.* The following synopsis is based primarily on appellant's testimony at trial. In the evening of January 24, 1979, appellant left his apartment to go bowling. When he returned at 2 a.m. the following morning he found that it had been ransacked and that a number of valuable items, including his stereo, had been stolen. No one was in the apartment when the burglary occurred.

Later that day appellant told a neighbor, Art Sanchez, about the theft. The following day, January 26, Sanchez informed appellant that a person named Edie had asked Sanchez if he knew anyone who wanted to buy a stereo. Sanchez related to appellant Edie's description of the stereo and appellant concluded from the description that the stereo might be his.

Sanchez asked appellant not to contact the police, since Edie was married to a cousin of Sanchez and they were not positive that the stereo belonged to appellant. Accordingly, appellant devised a plan for recovering his property: Sanchez would have Edie bring the stereo to Sanchez' house for sale, appellant and some friends would grab Edie, and *then* they would notify the police. Sanchez warned appellant that Edie was dangerous and unpredictable: he was a narcotics addict usually "high" on drugs; he had just been released from prison, where he had been a member of a prison gang; he stole for a living; and he sometimes carried a gun.

That night, as planned, Sanchez and a companion, Cabrera, visited Edie, saw the stereo, agreed to purchase it for $400 (which appellant supplied), and returned to Sanchez' house to complete the transaction. There, Cabrera gave the $400 to Edie, who then helped to carry the stereo speakers into the house from his car, and left.

Meanwhile, appellant and friends were waiting in the bedroom. When Cabrera announced that Edie was leaving, appellant went to the kitchen, identified the stereo as his, and went outside, where he saw Edie in his car. Appellant tried to open the driver's door, but it was locked. Appellant told Edie to "freeze" and get out of the car. Cabrera opened the passenger door and tried to grab Edie, telling him to stop and get out. Edie then reached under his seat, causing both appellant and Cabrera to believe that he was reaching for a gun. They both stepped back and Edie accelerated, hitting two trees with his open passenger door. Appellant, who was armed with a loaded 9-mm. automatic

pistol, then fired into the driver's door of the car. He feared, he testified, that Edie would run over him or Cabrera and get away. Edie then shifted forward and accelerated down the street, and appellant gave chase. Appellant testified that he saw the brake lights go on, and thought Edie was going to stop and shoot, so appellant fired at the car, emptying the gun. Edie died of a bullet wound in his chest.

## I.

As regards appellant's conviction for involuntary manslaughter, the sole issue is whether the trial court erred in refusing to give an instruction, which appellant's counsel requested, to the effect that homicide is justifiable "when necessarily committed in attempting, by lawful ways and means, to apprehend any person who has committed burglary of the first degree."[1]

In contending that he was entitled to such an instruction, appellant relies primarily upon two decisions of the Court of Appeal: *People v. Piorkowski, supra*, 41 Cal.App.3d 324, and *People v. Walker* (1973) 32 Cal.App.3d 897 [108 Cal.Rptr. 548].

In *Piorkowski*, a private citizen shot and killed one of several youths whom he observed fleeing from a business establishment after a reported theft. In concluding that there was no justification for the homicide, the court stated: "The evidence disclosed by the record in this case clearly demonstrates that the crime committed by the victim was not of the type which normally threatens death or great bodily harm. Even though the evidence did evince the commission of a burglary by the victim, as defendant asserts, the use of deadly force to effect the arrest was not warranted. We do not have here a burglary of a dwelling at night (common law burglary), such as was the case in *People v. Walker*, 32 Cal.App.3d 897.... Rather, the crime was committed during daylight hours and in a business establishment which was open to the public at the time. No confrontation aided by force was involved. While this factual pattern may constitute 'statutory burglary,' which is a felony (Pen. Code, § 459), clearly there is not the attendant risk to human life which accompanies common law burglary." (Id., at p. 330.)

---

[1]Appellant also asserted justification based on self-defense, but no legal error is claimed with regard to the jury's apparent rejection of that theory. Respondent does not question, and we therefore do not address, the applicability of Penal Code section 197, subdivision 4 to these facts apart from the issue raised by appellant.

In *People* v. *Walker*, to which the court in *Piorkowski* referred, the defendant shot and killed one of several persons who had just stolen a television set from the house next door. While it turned out that no one was in the house at the time, the defendant testified that he believed someone was home, and feared she might have been killed by the burglars. The prosecution argued, inter alia, that the victim was intoxicated and therefore lacked the capacity to form the specific intent necessary to the crime of burglary, and the trial court submitted that issue to the jury. The Court of Appeal held that was error, and that the jury should have been instructed that the victim committed the crime of burglary as a matter of law. (32 Cal.App.3d at p. 905.) There was no discussion in that case of the requirement, first imposed in *Piorkowski*, that the felony committed by the victim be one which threatened death or great bodily injury; and the *Piorkowski* reference to *Walker* was obviously dicta. Neither case decided the issue presented here.

Of substantially greater relevance and authority is the Supreme Court's more recent decision in *People* v. *Ceballos* (1974) 12 Cal.3d 470 [116 Cal.Rptr. 233, 526 P.2d 241]. In that case the defendant was convicted of assault with a deadly weapon after a trap gun, which he had mounted in the garage of his dwelling, fired and hit a person who entered the garage in an attempt to commit burglary. The defendant relied upon Penal Code section 197, subdivisions 1 and 2, which provide that homicide is justifiable "1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, [¶] 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, . . ." In rejecting that justification defense, the court acknowledged that the statute on its face made no distinction as to type of felony, but it approved the reasoning of the Court of Appeal in *People* v. *Jones* (1961) 191 Cal.App.2d 478, 481 [12 Cal.Rptr. 777], to the effect that Penal Code section 197 "'does no more than codify the common law and should be read in the light of it.'" (12 Cal.3d at p. 478.) *Jones* read into subdivision 1 of section 197 the limitation that the felony be "'some atrocious crime attempted to be committed by force'" (191 Cal.App.2d at p. 481), and the Supreme Court found the same limitation applicable to subdivision 2.

In considering whether the burglary in that case involved an "atrocious crime" within the meaning of the common-law (and therefore statutory) rule, the court in *Ceballos* stated: "Where the character and manner of the burglary do not reasonably create a fear of great bodily

harm, there is no cause for exaction of human life [citations], or for the use of deadly force [citation]. The character and manner of the burglary could not reasonably create such a fear unless the burglary threatened, or was reasonably believed to threaten, death or serious bodily harm. [¶] In the instant case *the asserted burglary did not threaten death or serious bodily harm, since no one but [the burglars] was then on the premises.*" (12 Cal.3d at p. 479, italics added.)

Appellant characterizes this last quoted sentence from *Ceballos* as dictum, but clearly it is more than that. It is a necessary element of the court's analysis, supporting the conclusion that the use of deadly force to *prevent* the burglary of an unoccupied premises is not justified under Penal Code section 197. (Cf. *People* v. *Trice* (1977) 75 Cal.App.3d 984, 986 [143 Cal.Rptr. 730].) And since a burglary committed when no one is on the premises is not a crime which threatens death or serious bodily harm so as to justify the use of deadly force in preventing its occurrence, it would seem to follow that it is not, or at least not per se, the sort of crime which justifies the use of deadly force by a citizen in apprehending the criminal.[2]  In the latter case, as well as the former, the modern common law rule limits the use of deadly force to "dangerous" felonies: "The law does not permit the use of deadly force for the mere purpose of *preventing* a nondangerous felony, and a private person cannot defeat this restriction merely by saying his purpose is arrest rather than prevention." (Perkins on Criminal Law (2d ed. 1969) p. 984; see *State* v. *Nyland* (1955) 47 Wn.2d 240 [287 P.2d 345]; *State* v. *Bryant* (1871) 65 N.C. 327; *Commonwealth* v. *Chermansky* (1968) 430 Pa. 170 [242 A.2d 237, 32 A.L.R.3d 1072].)[3]  Indeed, the court in *Piorkowski* expressly determined that "[t]he reasoning of the

[2]It has been observed that "California has followed the common-law premise that the right to use force for crime prevention or arrest should be the same." (Note, *Justification for the Use of Force in the Criminal Law* (1961) 13 Stan.L.Rev. 566, 569-570.)

[3]Whether the common law has developed similar limitations upon the use of deadly force by police officers is more debatable. (See Perkins on Criminal Law, *supra*, at pp. 983-984.) It is interesting to note that "[t]he privilege of using deadly force had its common-law development primarily in the areas of law enforcement and crime prevention, and the extent of the development is not surprising since all felonies were punishable by death in those early days. As the felon had forfeited his life by the perpetration of his crime, it was quite logical to authorize the use of deadly force if this reasonably seemed necessary to bring him to justice." (*Id.*, at p. 985.) Since escape from arrest is not a crime punishable by death, the justification for licensing a private citizen to impose capital punishment upon persons fleeing from crimes outside that category is not readily apparent. (See Note, *Justification for the Use of Force in the Criminal Law, supra*, 13 Stan.L.Rev. 566, 581-582.) We do not, of course, reach that policy question.

court in *Jones* [limiting subdivision 1 of section 197 to dangerous felonies on the basis of common law] applies with like force and effect in construing subdivision 4 of section 197." (41 Cal.App.3d 324, 329.) We conclude that the trial court did not err by refusing to give the instruction requested.

## II.

■ Appellant's other contention, that the firearm use finding should be stricken, is based upon the language of Penal Code section 12022.5, which provides that "[a]ny person who personally uses a firearm in the commission...of a felony shall, upon conviction of such felony..., be punished by an additional term of two years, *unless use of a firearm is an element of the offense of which he was convicted....*" (Italics added.) The jury was instructed that it could find appellant guilty of involuntary manslaughter if it determined that the killing was unlawful either because (1) it occurred "During the commission of a misdemeanor which is inherently dangerous to human life, namely, the offense of 417 P.C., exhibiting a firearm," or (2) in the "commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection." Appellant's argument is that the use of a firearm is an essential element of the offense as defined in the first alternative given the jury; and that since it cannot be said with assurance that the jury did not rely upon that alternative, enhancement for use of a firearm is precluded, and the finding of such use should be stricken.

We do not agree. The crime of manslaughter may be committed in many ways without a firearm; the fact that this particular crime was committed with use of a firearm does not make such use an "essential element" of the offense.

The order granting probation is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.