[No. F004497. Fifth Dist. June 5, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
PAUL OLIVE MARTIN, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Nancy Sweet and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Appellant.

Simrin & Moloughney and Stanley Simrin for Defendant and Respondent.

## Opinion

**HAMLIN, J.**—The People appeal from an order granting defendant's Penal Code section 995 motion to set aside the information charging defendant with involuntary manslaughter (Pen. Code, § 192, subd. 2)[1] and alleging the use of a firearm in the commission of that offense (§ 12022.5).

This appeal requires us to decide whether section 197, subdivision 4,[2] justifies defendant's shooting and killing one of the apparently unarmed participants in the nighttime burglary of his son's temporarily unoccupied residence while that participant was fleeing from the scene of the burglary. We conclude that the statute must be construed to justify the homicide. We will affirm the order setting aside the information.

### The Facts

After dark on December 22, 1983, two unarmed youths, one 17 and the other 14 years old, broke into the Bakersfield residence of defendant's son to steal marijuana. Defendant, an off-duty deputy sheriff who lived next door and who knew his son and his family were not home at the time, heard his dogs barking and went out to investigate. He saw one of the youths getting ready to enter his son's residence and heard the voice of another already inside the residence. He then reentered his home to get his 12-gauge shotgun and told his wife to call the sheriff's office. When he went back outside with his gun in hand he saw the two burglars fleeing. He pointed his shotgun at them and ordered them to stop. One immediately dropped to the ground. The other kept running, climbed a fence, and was about to get away. Defendant fired one shot at the fleeing felon which resulted in his death.

Soon after the shooting sheriff's officers arrived at the scene. Defendant gave them the tape-recorded statement set forth in the margin.[3]

---

[1] Penal Code section 192 was amended after December 22, 1983, the date of occurrence of the homicide with which defendant was charged. Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] Section 197, subdivision 4, provides: "Homicide is also justifiable when committed by any person in any of the following cases:

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, . . ."

[3] "I heard my dogs barking on the west side of the house. They had been barking for three or four minutes. I went out to see if I could see anything in the neighborhood going wrong. My boy lives in the house next door, 2211, and he has been burglarized three or four times in the past year or so. When I went out the front door, there was a blackheaded individual with the screen door open working on the front door. I heard a voice from the inside talking

## Discussion

The magistrate denied defendant's motion at the conclusion of the preliminary hearing to dismiss the charges against him. After the information was filed, defendant moved to dismiss under section 995. The superior court granted this motion.

Since the facts in this case are undisputed, it is apparent that the different conclusions reached by the magistrate and the trial court on whether the homicide was justified are based upon conflicting interpretations of section 197, subdivision 4. ■ It is well established that the applicability of a statute to undisputed facts is a question of law and this court is not bound by the lower court's conclusion. (See, e.g., *Neal v. State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839].)

■ At common law, an officer or private person could use deadly force if necessary to capture a fleeing felon. (*State* v. *Rutherford* (1821) 8 N.C. 457; Perkins, Criminal Law (1957) pp. 873-874.) This remains the law in a substantial number of jurisdictions. In at least one leading criminal law textbook, the common law rule is stated as the general rule, subject to exceptions: "Ordinarily, an officer or private person, in making an arrest for a felony, may use whatever force is reasonably necessary to overcome a resisting felon or to stop a fleeing felon, even to the extent of taking his life; and, if deadly force is used, the homicide is justifiable. The supportive theory is that 'felons ought not to be at large, and that the life of a felon has been forfeited; for felonies at common law were punishable with death.' Although according to some courts a felony must in fact have been committed, according to others it is sufficient merely that there be reasonable ground for the belief that a felony had been committed. Some courts allow deadly force only if the felony is a dangerous one; others allow deadly force in the case of any felony." (2 Wharton's Criminal Law (Torcia 14th ed. 1979) § 122, pp. 103-108, fns. omitted.)

to him on the outside. I came in the house, got my shotgun, went back out and the fellow on the outside was just going inside. I went around to the back of the house and I saw the back door's glass had been kicked out or broken out. Came back around and told the wife to call the Sheriff's Office. Went back down the side of the house on the west side of his place; and as I got to the corner, they come running out the back door. Two boys crossed the back lawn and I started hollering, told them to halt, don't move, stay put. One boy, the dark-haired one, tripped on something. The other boy—they had something in their hands— the other boy kept on running a little west, then south. I yelled at him to stop and hold it several times. I got no response. He got to the canal bank, jumped over the fence and was running east down the canal bank and I was still hollering at him to stop and I fired one shot then. Heard no other noise of any kind and the boy that was down with me at the place where I fired the shot hadn't moved yet. He was complaining his foot was cut or something like that. And then the Sheriff's Office started arriving probably three or four minutes later."

This common law privilege of using deadly force to prevent the escape of a fleeing felon served to deter criminals from attempting to escape. (Note, *Justification for the Use of Force in the Criminal Law* (1961) 13 Stan.L.Rev. 566, 580-581.) It arose at a time when almost all felonies were punishable by death. (2 Wharton, *supra,* at pp. 103-107.) The same privilege of using deadly force did not exist to stop one fleeing after commission of a misdemeanor. (*Ibid.*) With the exception of murder under special circumstances, the common law crimes punishable by death[4] no longer are or can be. (*Tennessee* v. *Garner* (1985) — U.S. —, — [85 L.Ed.2d 1, 11, 105 S.Ct. 1694, 1702-1703].) Similarly, the compelling distinction which in earlier times existed between felonies and misdemeanors is today minor and often arbitrary. Many crimes classified as misdemeanors, or nonexistent, at common law are now felonies. These changes have made the assumption that a "felon" is more dangerous than a misdemeanant untenable. (*Ibid.*)

Admittedly, the significant changes pointed out in *Tennessee* v. *Garner, supra,* — U.S. —, have undermined the justification for homicide which section 197, subdivision 4, facially provides. The California Legislature enacted that statute in 1872 and has not seen fit to amend it. ■ We must determine the legislative intent when enacted. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 624 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) We presume that when the statute was enacted the Legislature was familiar with the common law rule, and, "when it couches its enactment in common law language, that its intent was to continue those rules in statutory form. [Citations omitted.] This is particularly appropriate in considering the work of the first session of our Legislature: its precedents were necessarily drawn from the common law, as modified in certain respects by the Constitution and legislation of our sister states." (*Id.,* at p. 625, fn. omitted.)

■ Burglary was a common law felony. (1 Wharton, *supra,* at p. 81.) As such, it was defined as a breaking and entering of a dwelling house at night with the intent to commit a felony. (See *People* v. *Barry* (1892) 94 Cal. 481, 482 [29 P. 1026].)

Although on its face section 197, subdivision 4, justifies every homicide necessarily committed in attempting to apprehend any person for *any felony,* our courts have not always so construed it. In the early case, *People* v. *Lillard* (1912) 18 Cal.App. 343 [123 P. 221], the court relied on this statutory provision in reversing the defendant's manslaughter conviction. There, the fleeing felon was shot after he had entered a woman's residence and assaulted her with the intent to commit robbery. The court did not find

---

[4]The common law felonies were murder, manslaughter, rape, robbery, mayhem, burglary, arson, larceny and prison break. (1 Wharton, *supra,* at p. 81.)

it necessary to characterize that felony as a common law crime or a dangerous crime. The defendant had taken his pistol and joined a crowd in pursuit of the felon as a result of the screams he had heard indicating the fleeing person might have been a thief or a murderer. While in the lead of the crowd and when he noted that the felon refused to stop and was reaching a dark place about 40 feet away, he fired a shot which caused the felon's death. In reversing defendant's conviction the court stated: "There is and can be no question from the record that a felony had been committed; that the deceased had committed the felony; that the defendant had reason to believe and did believe these facts, and that he pursued the deceased with the intent to capture him, and for no other purpose. . . . Section 197 of our Penal Code provides that homicide is justifiable when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed. Wharton on Homicide declares the rule, and quotes abundant authority in its support: 'Even a private person is justified in killing a fleeing felon who cannot otherwise be taken, if he can prove that the person is actually guilty of the felony.'" (*Id.*, at pp. 345-346.) The court went on to state that "[i]f officers and citizens are to be punished for an effort to suppress crime and to bring to justice those who commit offenses against the law, it is but offering a premium for crime." (*Id.*, at p. 346.)

Some 50 years after *Lillard* was decided, *People* v. *Jones* (1961) 191 Cal.App.2d 478 [12 Cal.Rptr. 777] required the court to interpret section 197, subdivision 1.[5] There, the defendant shot and killed her husband during a domestic quarrel. The defendant had requested an instruction to the jury that wife-beating was a felony. The trial court denied the request because it conflicted with the instruction it gave on justification in the language of section 197, subdivision 1. The defendant was convicted of manslaughter. In upholding on appeal the trial court's refusal to give the requested instruction, the court stated:

"It is true that Penal Code, section 197, subdivision 1, does provide that homicide is justifiable when resisting an attempt to commit a felony. But the section does no more than codify the common law and should be read in the light of it. Taken at face value, and without qualification, it represents an oversimplification of the law today.

"The authorities generally rely on Blackstone for the earliest expression of the rule. He rationalized it in terms of no killing being justified to prevent

---

[5]Section 197, subdivision 1, provides in pertinent part: "Homicide is also justifiable when committed by any person in any of the following cases:

"1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; . . . ."

crime unless the offense was punishable by death. (4 Blackstone's Commentaries, pp. 180-182.) But in those days all felonies were capital offenses.

"Perhaps the leading American case on the point is *Storey* v. *State,* 71 Ala. 329, 336-341, where the early law is reviewed and rejected, and the application of the rule limited to the commission of felonies that involve a danger of great personal harm, or 'some atrocious crime attempted to be committed by force.' This limitation is today generally recognized. (Perkins on Criminal Law, 1957 ed., pp. 880-883; 1 Wharton's Criminal Law, Anderson, 1957 ed., pp. 453-456; 1 Warren on Homicide, 1938 ed., pp. 634-637.) Any civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of apparent absolute necessity. (*State* v. *Nodine,* 198 Ore. 679 [259 P.2d 1056, 1067-1071].)" (*People* v. *Jones, supra,* 191 Cal.App.2d at pp. 481-482.) The court then went on to state that the Legislature in creating a statutory felony of wife-beating did not intend to permit the killing of husbands. Finally, the court noted that the remaining language of section 197, subdivision 1, suggests that deadly force can only be used to prevent a felony that threatens life or serious bodily injury.

*People* v. *Jones, supra,* 191 Cal.App.2d 478, lends support to the People's contention that statutory justification for homicide does depend upon the nature of the felony threatened or committed even though the Legislature appeared willing to rely solely upon the definition of a felony. However, there are several important reasons why that case is of limited assistance in resolving the issue presented here. First, it dealt with a felony (wife-beating) not recognized at the time section 197 was enacted. Second, it interpreted subdivision 1 and not subdivision 4 of section 197. There are important differences between subdivisions 1 and 4 of section 197. Under subdivision 1, homicide is justifiable in resisting an attempt to murder, or to commit a felony, or to do some great bodily injury. The language before and after "to commit a felony" implies that the felony contemplated by that statute is one more dangerous than a personal assault. Additionally, at common law there was a broader privilege to use deadly force in arresting a felon than in preventing his criminal act. (See Note, *Justification for the Use of Force in the Criminal Law, supra,* at p. 580.)

*People* v. *Walker* (1973) 32 Cal.App.3d 897 [108 Cal.Rptr. 548] required the court to interpret section 197, subdivision 4, the provision with which we are most concerned in this case. There, the defendant, a private citizen, shot to death a person he believed was fleeing after participating in a nighttime burglary of his next door neighbor's residence. The trial court submitted to the jury the question of whether the decedent had actually committed a burglary and instructed the jury to consider the decedent's state of

intoxication in determining whether he had the specific intent required for the commission of a burglary. The jury found the defendant guilty of involuntary manslaughter.

The appellate court reversed, holding that the defendant was entitled to the instruction that the decedent had committed burglary, a felony. The decedent's diminished capacity was irrelevant in the context of evaluating the defense of justifiable homicide.

Although the reversal was based on an instructional error, the court discussed in dictum that under a justifiable homicide theory it is reasonable to require that the underlying crime be of serious magnitude. "In short, it is reasonable to require that the act be of felony stature, rather than a misdemeanor. It is also reasonable to require a showing of necessity to take a life in order to apprehend." (*People* v. *Walker, supra,* at p. 902.) The court went on to conclude that the term "felony" in section 197, subdivision 4, "refers to the statutory definition of such an offense and nothing more." (*Id.,* at p. 903.)

In *People* v. *Piorkowski* (1974) 41 Cal.App.3d 324 [115 Cal.Rptr. 830], the defendant, while walking along a city street in the afternoon, saw three youths in a drycleaning establishment. One appeared to have climbed over the counter. When defendant returned to that area a few minutes later he saw the same youths walking away from the drycleaning establishment. He asked the proprietor if everything was all right. She then discovered the wallet from her purse was missing. The defendant pursued the youths, caught up with them, drew his holstered pistol, and ordered them to halt. Two did, but one kept going. The defendant pursued, caught him, a struggle ensued, and the youth was shot to death. The jury rejected the defendant's section 197, subdivision 4, defense and convicted him of involuntary manslaughter.

The conviction was affirmed on appeal. The court stated that deadly force may be used to arrest a felon where the "felony committed is one which threatens death or great bodily harm. *Commonwealth* v. *Chermansky* [(1968) 430 Pa. 170 (242 A.2d 237, 32 A.L.R.3d 1072)]; *State* v. *Nyland,* 47 Wn.2d 240 [287 P.2d 345]." (*People* v. *Piorkowski, supra,* 41 Cal.App.3d at p. 329.) The *Piorkowski* court then quoted that part of *People* v. *Jones, supra,* that we have earlier quoted and concluded that: "The reasoning of the court in *Jones* [analysis of section 197, subdivision 1] applies with like force and effect in construing subdivision 4 of section 197. (Cf. *People* v. *Walker,* 32 Cal.App.3d 897 . . . .) The law of this state makes it a felony to commit such offenses as the theft of $50 worth of avocados, olives, artichokes, nuts, etc. (Pen. Code, § 487), the conversion of real

estate of the value of $50 or more into personal property by severance from the realty of another (Pen. Code, § 487b), theft of a dog the value of which exceeds $200 (Pen. Code, §§ 487e and 487g), a second conviction for indecent exposure (Pen. Code, § 314), or conspiracy to commit any crime (Pen. Code, § 182). Needless to say, modern rationale must preclude the holding that a private citizen may use deadly force in attempting to arrest a person for such offenses.

"The evidence disclosed . . . in this case clearly demonstrates that the crime committed by the victim was not of the type which normally threatens death or great bodily harm. Even though the evidence did evince the commission of a burglary by the victim, as defendant asserts, the *use of deadly force to effect the arrest was not warranted. We do not have here a burglary of a dwelling at night (common law burglary), such as was the case in People v. Walker, 32 Cal.App.3d 897 . . . .* Rather, the crime was committed during daylight hours and in a business establishment which was open to the public at the time. No confrontation aided by force was involved. While this factual pattern may constitute 'statutory burglary,' which is a felony (Pen. Code, § 459), clearly there is not the attendant risk to human life which accompanies common law burglary.

"We are of the opinion that the character of the crime and the manner of its perpetration did not warrant the use of deadly force to effect the arrest, i.e., it was not 'necessarily committed.'" (*People v. Piorkowski, supra,* at pp. 329-330, italics added.)

Although *Piorkowski* appears to support the People's position, it is distinguishable from the case at bar. First, *Piorkowski* held that under its facts deadly force was not necessary to apprehend the felon as required under section 197, subdivision 4. The defendant there had grabbed the felon and was struggling with him when he shot him. Here, defendant was separated from the victim by a fence some 60 feet away on a dark night. Additionally, defendant was concerned with keeping in custody the burglar he had already caught. Under the undisputed facts, defendant's use of a gun was necessary in order to apprehend the fleeing felon. Second, *Piorkowski* involved a daytime burglary of a business which, unlike our case, was not recognized as a felony at common law. *Piorkowski* even acknowledges this in distinguishing the nighttime residential burglary in *People v. Walker, supra,* 32 Cal.App.3d 897. *Piorkowski* also pointed out that the definition of felonies has dramatically expanded. While most of the crimes discussed in *Piorkowski* were not felonies at common law, it bears repeating that in this case the victim committed a crime that was a felony at common law.

Shortly after *Piorkowski,* our Supreme Court decided *People v. Ceballos* (1974) 12 Cal.3d 470 [116 Cal.Rptr. 233, 526 P.2d 241]. In that case two

boys attempting a burglary were injured by a trapgun designed to fire when a residential garage door opened. The owner was convicted of assault with a deadly weapon despite his contention that the shooting would have been justified had he been present at the time of injury, and that he had a right to do indirectly (trapgun) what he was entitled to do directly.

Our Supreme Court affirmed the conviction and held that under section 197, subdivisions 1 and 2, the use of deadly force is permitted only in the event a felony constitutes a "forcible and atrocious" crime such as murder, mayhem, rape, robbery, and some, but not all, burglaries. "[I]n view of the wide scope of burglary under Penal Code section 459, as compared with the common law definition of that offense, in our opinion it cannot be said that under all circumstances burglary under section 459 constitutes a forcible and atrocious crime.[2]"

The defendant in *Ceballos* also argued that if he had been present he would have been justified in shooting the victim under section 197, subdivision 4. The court discussed *People* v. *Lillard, supra,* 18 Cal.App.3d 343, and distinguished it because the *Ceballos* defendant made no showing that he had intended to apprehend a felon; rather, he appeared to have intended to prevent a burglary, protect his property, and to avoid the possibility that a thief might get into his house and injure defendant on his return.

Although *Ceballos* deals with a justifiable homicide defense, it does not resolve the instant case. First, the court interpreted and based its decision on section 197, subdivision 1 and 2. ▮ This is significant because, as was pointed out in *Ceballos,* cases are, of course, "not authority for propositions not there considered. (*People* v. *Banks,* 53 Cal.2d 370, 389 . . .; *In re Tartar,* 52 Cal.2d 250, 258 . . . .)" (*People* v. *Ceballos, supra,* 12 Cal.3d at p. 481.) ▮ Second, *Ceballos,* unlike the instant case, involved the use of a trapgun device which is clearly not encouraged. "Such devices 'are silent instrumentalities of death. They deal death and destruction to the innocent as well as the criminal intruder without the slightest warning. The taking of human life . . . by such means is brutally savage and inhuman.'" (*Id.,* at p. 477.) Third, *Ceballos* discussed *People* v. *Lillard, supra,* 18 Cal.App. 343, with approval and *Lillard* is quite similar to this case.

---

"[2]At common law burglary was the breaking and entering of a mansion house in the night with the intent to commit a felony. [Citations omitted.] Burglary under Penal Code section 459 differs from common law burglary in that the entry may be in the daytime and of numerous places other than a mansion house [citation omitted] and breaking is not required [citation omitted]. For example, under section 459 a person who enters a store with the intent of committing theft is guilty of burglary. [Citation omitted.] It would seem absurd to hold that a store detective could kill that person if necessary to prevent him from committing that offense. [Citation omitted.]" (*People* v. *Ceballos, supra,* 12 Cal.3d at p. 479.)

The next key case is *People* v. *Quesada* (1980) 113 Cal.App.3d 533 [169 Cal.Rptr. 881].[6] There, the defendant reasonably suspected that a certain person had burglarized his unoccupied home. Hoping to apprehend the suspect, the defendant set up a "buy" *two days later.* After the "buy," when the suspect turned to leave, the defendant tried to arrest him. The suspect proceeded to drive away so the defendant shot him to death. The defendant contended that the killing was justified under section 197, subdivision 4. The trial judge refused the defendant's requested instruction tailored to take advantage of that statutory provision. The jury returned a guilty verdict on the involuntary manslaughter charge.

The appellate court affirmed. It cited *Piorkowski* as holding that under section 197, subdivision 4, the justification for the use of deadly force exists only where the felony committed is one which threatened death or great bodily injury. The *Quesada* court then went on to state that section 197, which codifies the common law on justifiable homicide, does not permit the use of deadly force to *prevent* a burglary which does not threaten death or serious bodily harm. Hence the use of deadly force by a private citizen to *apprehend* the suspected burglar of an unoccupied dwelling stands on the same footing.

*People* v. *Quesada, supra,* 113 Cal.App.3d 533 is an important case in support of the People's position that the "dangerous felony" standard is applicable in determining which felonies justify the use of deadly force under the "any felony" language of section 197, subdivision 4. However, it does not mandate the conclusion in this case that section 197, subdivision 4, does not justify defendant's homicide.

Although *Quesada* involved a nighttime burglary recognized as a felony at common law, the specific issue before the court was the defendant's right to have the jury instructed to the effect that homicide is justifiable " 'when necessarily committed in attempting, by lawful ways and means, to apprehend any person who has committed burglary of the first degree.' " (*People* v. *Quesada, supra,* 113 Cal.App.3d at p. 537.) Such an instruction made no distinction between apprehension of the person who had committed the burglary while fleeing from the scene and apprehension after the felon had completed his escape. The social need for justification of a homicide com-

---

[6]*Jones, Piorkowski,* and *Ceballos* were cited as authority in two later civil cases which stated in dicta that a police officer's right under section 196, subdivision 3, to use deadly force in apprehending felons is limited to those felonies which threaten death or great bodily harm. (See *Kortum* v. *Alkire* (1977) 69 Cal.App.3d 325, 333 [138 Cal.Rptr. 26]; *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364 [132 Cal.Rptr. 348].) However, in *Peterson* v. *City of Long Beach* (1979) 24 Cal.3d 238, 247, footnote 8 [155 Cal.Rptr. 360, 594 P.2d 477], our Supreme Court declined to decide the correctness of this limitation.

mitted in the latter circumstance, as in *Quesada,* is virtually nonexistent. In sharp contrast, failure to apprehend when the felon is fleeing the scene of the crime frequently means that the felon remains at large. Later investigation cannot represent a substitute for immediate apprehension. (See *Tennessee* v. *Garner, supra,* — U.S. at p. — [85 L.Ed.2d at p. 20, 105 S.Ct. at pp. 1709-1710], dis. opn. of O'Connor, J.) Accordingly, a person may reasonably expect that he is justified in using deadly force to apprehend a felon fleeing the scene of the crime. No such reasonable expectation could exist in attempting apprehension after escape. Other safer and less drastic procedures for apprehension after escape are well known.

Additionally, we note that the *Quesada* court in limiting the words "any felony" in section 197, subdivision 4, to dangerous felonies relied on *People* v. *Piorkowski, supra,* 41 Cal.App.3d 324 and *People* v. *Ceballos, supra,* 12 Cal.3d 470. *Piorkowski* involved a daytime burglary of a drycleaning business. And as we have already pointed out, *Piorkowski* clearly distinguished *People* v. *Walker, supra,* 32 Cal.App.3d 897 involving a nighttime residential burglary, a felony at common law. Also, as we have noted above, *Ceballos* required the court to interpret section 197, subdivision 1, justifying homicide in resisting an attempt to murder, or to commit a felony, or to do some great bodily injury. The language of that subdivision by implication contemplates a felony more dangerous than a personal assault. (See *People* v. *Jones, supra,* 191 Cal.App.2d at p. 482.)

When we apply the unqualified and unrestricted "any felony" language of section 197, subdivision 4, as interpreted by the courts of this state prior to defendant's commission of the homicide in this case, we conclude that the statute is ambiguous. In adopting the words "any felony" to define justifiable homicide under section 197, subdivision 4, the Legislature necessarily intended to include all the common law crimes then recognized, including nighttime burglary of a dwelling house. Admittedly, the crimes classified as felonies have been substantially enlarged since 1872 and there are other unanticipated meanings of the words "any felony" which we have considered above. However, none of the cases reviewed justifies disregarding the presumed intent of the Legislature to include in the definition of "any felony" those crimes which were felonies at common law.

█ In the circumstances of this case it is appropriate that we follow "the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. [Citation omitted.]" (*Keeler* v. *Superior Court, supra,* 2 Cal.3d at p. 631.) Stated another way,

"when the language used in a penal law is reasonably susceptible of two constructions, ordinarily that construction which is more favorable to the defendant will be adopted." (*People* v. *Moreland* (1978) 81 Cal.App.3d 11, 17 [146 Cal.Rptr. 118].)

■ The approach we adopt to the construction of section 197, subdivision 4, is dictated not only as a matter of fairness in restricting the meaning of a statute to that which should have been foreseen but also to avoid a violation of the first essential of due process of law. (See Jeffries, *Legality, Vagueness, and the Construction of Penal Statutes* (1985) 71 U.Va.L.Rev. 189, 205.) As Justice Holmes pointed out in *McBoyle* v. *United States* (1931) 283 U.S. 25, 27 [75 L.Ed. 816, 818, 51 S.Ct. 340]: "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." ■ In this case we cannot say it is unlikely that defendant considered the text of section 197, subdivision 4, in deciding to fire his gun at the fleeing felon. He was an off-duty police officer who may reasonably be expected to have general knowledge of legislative restrictions on the use of deadly force in apprehending felons. That is an even more compelling reason to interpret the statute in favor of defendant.

The result we reach is not affected by the recent United States Supreme Court decision in *Tennessee* v. *Garner, supra,* — U.S. — [85 L.Ed.2d 1, 105 S.Ct. 1694]. There the court held that a Tennessee statute permitting police to use deadly force to prevent escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It noted that insofar as the statute authorizes use of such force against apparently unarmed, nondangerous suspects it violates the Fourth Amendment.[7] The court held that deadly force may not be used unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses significant threat of death or serious physical injury to the pursuing officer or others.

■ While *Tennessee* v. *Garner* necessarily limits the scope of justification for homicide under section 197, subdivision 4, and other similar statutes from the date of that decision (Mar. 27, 1985), the requirements it imposes for justification cannot be applied retroactively to the detriment of one accused of crime. (See *Marks* v. *United States* (1977) 430 U.S. 188 [51 L.Ed.2d 260, 97 S.Ct. 990]; *Bouie* v. *City of Columbia* (1964) 378 U.S.

---

[7]"The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." (U.S. Const., 4th Amend.)

347 [12 L.Ed.2d 894, 84 S.Ct. 1697].) As the court pointed out in *Bouie* v. *City of Columbia:* "When a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct. When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction. If the Fourteenth Amendment is violated when a person is required 'to speculate as to the meaning of penal statutes,' as in *Lanzetta* [*Lanzetta* v. *New Jersey* (1939) 306 U.S. 451 (83 L.Ed. 888, 59 S.Ct. 618)], or to 'guess at [the statute's] meaning and differ as to its application,' as in *Connally* [*Connally* v. *General Const. Co.* (1926) 269 U.S. 385 (70 L.Ed.2d 322, 46 S.Ct. 126)], the violation is that much greater when, because the uncertainty as to the statute's meaning is itself not revealed until the court's decision, a person is not even afforded an opportunity to engage in such speculation before committing the act in question." (*Id.*, at p. 352 [12 L.Ed.2d at p. 899].)

The due process considerations are the same whether the statutory crime is enlarged or justification for conduct otherwise criminal is restricted by judicial interpretation. There is the same lack of notice and lulling the potential defendant into a false sense of security. (See *Com.* v. *Klein* (1977) 372 Mass. 823 [363 N.E.2d 1313, 1320].)

■ We therefore conclude that the trial court did not err in dismissing the information. The undisputed facts establish that defendant necessarily committed the homicide in attempting by lawful ways and means to apprehend the victim while fleeing from the scene of his nighttime residential burglary. We specifically limit our holding to felons fleeing after commission of a crime which was a felony at common law. Further, our interpretation of section 197, subdivision 4, is applicable only to offenses alleged to have occurred prior to the decision in *Tennessee* v. *Garner, supra,* — U.S. —.

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.