Filed 3/19/15  P. v. Mendez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS MENDEZ and OVIDIO MARGARITO SALAZAR,<br><br>  Defendants and Appellants. | 2d Crim. No. B254810<br>(Super. Ct. No. VA122009)<br>(Los Angeles County) |

      Juan Carlos Mendez and Ovidio Margartio Salazar appeal from judgments entered after separate juries (Mendez  = "blue jury" and Salazar = "red jury")  convicted them of second degree murder (Pen. Code, §§  187, subd. (a), 189).[1] The evidence is uncontroverted that Mendez and Sanchez chased a U-Haul truck and Salazar fired three shots at the truck, striking the truck driver in the head.  The blue jury found Mendez guilty of second degree murder of the driver (count 1; §§ 187, subd. (a), 189) and attempted premeditated murder of the truck passenger (count 2; §§ 664/187, subd. (a)).  Salazar's jury returned a not-guilty verdict on the attempted murder count but convicted Salazar of second degree murder with special findings that he personally and intentionally discharged a firearm resulting in the death of the truck

---

[1] All statutory references are to the Penal Code unless otherwise stated.

driver (§ 12022.53, subds. (b) - (d)).  Salazar admitted suffering a prior strike conviction (§§ 667, subds. (b) - (i); 1170.12, subds. (a) - (d)) and was sentenced to 30 years to life for second degree murder (15 years to life doubled based on the prior strike conviction) plus 25 years to life on the firearm enhancement (§ 12022.53, subd. (d)).  The trial court sentenced Mendez to 15 years to life on count 1 for second degree murder and a consecutive life with possibility of parole on count 2 for attempted premeditated murder.  Appellants contend that the trial court committed instructional error and the verdicts are not supported by the evidence.  We affirm.

*Facts*

On the evening of September 19, 2011, Randy ("Johnny") Telles, Christine Telles (Randy's cousin),  and Quennie Reyna  "burglarized" Mendez's house in Bell Gardens.  Randy waited in a U-Haul truck while Quennie and Christine removed the window air conditioner, entered Mendez's house and took a laptop computer.  A neighbor saw the women jump a fence and run to the U-Haul truck.

When Mendez returned home, a neighbor said that Quennie and Christine had "burglarized" his house.[2]  Mendez falsely told the police that that he did not know the identity of the burglars.  Police investigators could not look for fingerprints because he did not have his house keys.

After the police left, Mendez told Jorge ("Spokes") Guevera that Christine and Quennie broke into his house and stole his laptop.  Mendez suspected that a U-Haul truck was used.  Guevara knew where Randy and the two women lived and offered to help Mendez get the laptop back.

Mendez said that he needed Salazar's help and picked him up several hours after the burglary.  Mendez, Salazar, and Guevara drove to Quennie's house in South Gate looking for the U-Haul truck.

---

[2] Christine and Quennie knew Mendez and Randy (Christine's cousin) dated Quennie for six years   Christine, Quennie, and Randy were methamphetamine users and sold the laptop for drug money.

Randy and Christine had just dropped Quennie off and were looking for a place to park when Mendez drove by in a Ford Expedition. Mendez recognized Randy, turned around, and drove back towards the U-Haul truck. Randy sped off in reverse, turned the truck around, and fled with Mendez in pursuit. Mendez drove through a red light and stop signs in residential areas at speeds of up to 50 miles per hour.

Salazar drew an AMT 45 semiautomatic handgun from his waistband and Mendez took his foot off the accelerator for a second. Salazar told Mendez in a "non-angry voice" to "keep going" and follow the truck. Mendez sped up and bumped into the back of the truck. Salazar stuck his arm out the window, took aim, and fired three shots. One bullet hit the truck tailgate and a second bullet shattered the rear window, striking Randy in the head.

Christine was crouched down on the truck floor as it crashed into an apartment complex parking lot. Peeking out the back window, she saw Mendez and Salazar in the Ford Expedition. Mendez had a shocked look on his face, backed up, and sped away. Mendez dropped Salazar off and drove Guevara back to Bell Gardens.

Salazar told the police that he fired three shots and hid the AMT 45 in his car air filter. Salazar claimed that Mendez brought the handgun and gave it to him to use. In a second recorded statement, Salazar said that Mendez gave him the handgun a week before and told him to bring it the night of the shooting.

At trial, Mendez denied knowing that Salazar had a handgun. On cross-examination, Mendez admitted lying to the police. Mendez told the police that he was home in bed and denied driving the Ford Expedition the night Randy was shot. When Mendez learned that Salazar had confessed, Mendez told the police that the person who stole his other vehicle the week before may have been the person chasing Christine and Randy.

*Second Degree Felony-Murder Instruction*

Mendez and Salazar claim they were denied a fair trial because the juries were instructed that an unlawful killing caused by shooting at an unoccupied vehicle is

3

second degree felony-murder. (CALJIC No. 8.32.)[3] When the underlying felony is assaultive in nature, the felony merges with the homicide and cannot be the basis for a felony-murder instruction. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.) "[S]hooting at an occupied vehicle under section 246 is assaultive in nature, and hence cannot serve as the underlying felony for purposes of the felony-murder rule." (*Ibid.*)

In *Chun,* defendant was charged with first degree murder based on a drive-by shooting of gang rivals at a traffic light. Defendant was convicted of second degree murder and acquitted of two counts of attempted murder, shooting from a motor vehicle, and shooting at an occupied motor vehicle. (*Id.*, at p. 1180.) The jury was instructed that an unlawful killing caused by shooting at an occupied motor vehicle is second degree felony-murder. Our Supreme Court held that the trial court erred in instructing on second degree felony-murder but the error was harmless because the jury receive a CALJIC 8.11 instruction (malice aforethought - defined) that fully instructed on implied malice murder. (*Id.*, at p. 1202.) "[T]he vehicle shot at was occupied by not one but three persons. The three were hit by multiple gunshots fired at close range from three different firearms. No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life - which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt." (*Id.*, at p. 1205.)

---

[3] The jury was given a modified CALJIC No. 8.32 instruction that stated: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as the direct causal result of the commission of the crime of shooting at an occupied motor vehicle is murder of the second degree when the perpetrator had the specific intent to commit the crime. [¶] The specific intent to commit [a] shooting at an occupied motor vehicle and the commission of that crime must be proved beyond a reasonable doubt. "

Like *Chun,* the juries were instructed on alternate theories of second degree murder: express malice, implied malice, and felony murder (CALJIC 8.11, 8.32) and the crime of shooting at an occupied vehicle (CALJIC 9.03).[4] The felony-murder instruction , CALJIC 8.32 and CALJIC 9.03 instruction stated that the prosecution had to prove that appellants had the specific intent to commit the underlying felony (shooting at an occupied vehicle), or in the case of Mendez, the specific intent to aid and abet Salazar, and did so willfully and maliciously. Any juror who referred to a felony-murder instruction would have necessarily found that appellants willfully shot at an occupied vehicle, or in the case of Mendez, willfully and maliciously aided and abetted Salazar in the commission of the crime. (*People v. Chun*, *supra,* 45 Cal.4th at p. 1205.)

Salazar admitted that he fired three shots and that it was Mendez's handgun. It took no leap in logic for the jury to find that Salazar intentionally fired a semiautomatic handgun that resulted in Randy's death. (§ 12022.53, subds. (c) & (d).) No reasonable juror could have found that Salazar committed the shooting without finding that he committed an act dangerous to life, with knowledge of the danger and conscious disregard for life. (*People v. Chun, supra,* 45 Cal.4th at pp. 1202-1203.) Although the trial court erred in instructing on second degree felony-murder, the error was harmless beyond a reasonable doubt. (*Id.*, at pp. 1204-1205; *People v. Hach* (2009) 176 Cal.App.4th 1450, 1452-1453 [jury instructed on implied malice murder

---

[4] The CALJIC 9.03 instructed stated: "Every person who willfully and maliciously discharges a firearm at an occupied motor vehicle is guilty of the crime of shooting at an occupied vehicle in violation of Penal Code section 246. [¶] Shooting at a particular object is not limited to shooting directly 'at' the object. It also includes shooting in such close proximity to the target that a probable consequence of the shooting is that one or more bullets either will strike the target or persons in or around it, and the shooter acted with a conscious disregard for this probable consequence. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person discharged a firearm at an occupied motor vehicle; and [¶] 2. The discharge of the firearm was willful and malicious."

5

and second degree felony-murder; conviction for second degree murder and shooting into an occupied vehicle affirmed].)

Mendez argues that the second degree murder felony-murder instruction denied him a fair trial. The jury was instructed that the prosecution had to prove that Mendez had the specific intent to aid and abet Salazar in the commission of the crime. (CALCRIM 3.01.) It was instructed that mere presence at the crime scene is not aiding and abetting, and mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.

Mendez's guilt as an aider and abetter was established. He recruited Salazar's help and told him to bring the handgun. When Mendez spotted the U-Haul truck, he gave chase, and followed Salazar's instructions to get closer. Mendez closed the gap and bumped the back of the U-Haul truck before the fatal shots were fired. The jury rejected the defense claim that Salazar and Mendez were five car lengths behind the truck, that it was a fluke shot, that Salazar only aimed at the tailgate, and that Salazar did not intend to shoot the truck window or kill anyone. The vehicles were so close, that Christine saw Mendez sitting in the driver's seat and the expression on his face. Christine was close enough to identify Salazar in the passenger seat, a man she had never met before. The distance distinctions between the present case and that of *People v. Chun*, *supra,* 45 Cal.4th at page 1179 (victim's car in the next lane) are insignificant. Firing multiple shots at an occupied vehicle is strong evidence of malice and intent to kill. (*People v. Smith* (2005) 37 Cal.4th 733, 741-742 [shot fired at close range]; *In re Sergio R.* (1991) 228 Cal.App.3d 588, 597 [shots fired from vehicle in close proximity to victim]; *People v. Francisco* (1994) 22 Cal.App.4th 1180, 1192 [five or six shots fired from vehicle].)

Mendez notes that the prosecution only argued second degree murder felony-murder. The jury, however, was instructed that it was to consider the instructions as a whole (CALJIC 1.01) and must follow the court's instructions even if they conflict with counsel's argument (CALJIC 1.00). It is presumed that the jury understood and followed the court's instructions. (*Weeks v. Angelone* (2000) 528 U.S.

6

225, 234 [145 L.Ed.2d 727, 738].) Like *People v. Chun*, *supra,* the CALJIC 8.11 instruction on malice aforethought and the instructions on murder (CALJIC 8.10) and shooting at an occupied vehicle (CALJIC 9.03) contained everything necessary to fully instruct on implied malice murder. Under any standard of review, appellants were not prejudiced or denied a fair trial because of the felony-murder instruction.

*Involuntary Manslaughter*

Appellants contend that the trial court erred in not sua sponte instructing that involuntary manslaughter is a lesser included offense of murder where the killing results from a lawful act done in an unlawful manner. The argument is based on the theory that appellants were making a citizen's arrest of Randy (a lawful act) and were statutorily authorized to carry a loaded firearm to effectuate the arrest. (§ 26050; *People v. Walker* (1973) 32 Cal.App.3d 897, 905 [discussing former section 12031, subd. (i).) "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

Involuntary manslaughter is the unlawful killing of a human being without malice in the commission of an unlawful act not amounting to a felony, or a killing in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection. (§ 192, subd. (b): *People v. Butler* (2010) 187 Cal.App.4th 998, 1007.) Regardless of how the "involuntary manslaughter is committed, the killing *must* be unintentional. [Citations.] If a killing is intentional, no involuntary manslaughter instructions may be given." (*People v. Dixon* (1995) 32 Cal.App.4th 1547, 1556.)

The argument that appellants were authorized to use a deadly weapon to detain and arrest Randy (i.e., a lawful act that might produce death in an unlawful manner) fails on several grounds. Section 837 permits a citizen arrest when a felony has been in fact committed and the arresting person has reasonable cause to believe the person arrested committed the felony. (§ 837; *People v. Piorkowski* (1974) 41 Cal.App.3d 324, 328.) Mendez had no reasonable cause to detain or arrest Randy.

7

(See *People v. Wilkins* (1972) 27 Cal.App.3d 763, 768 [whether reasonable cause exists must be decided on the facts presented at the time].)  Mendez admitted that he did not have good cause to tell the police that Christine and Quennie may have committed the burglary.  When Mendez recruited Salazar to help, Mendez said that "two girls" broke into his house and were driving a U-Haul truck.  There was no mention of Randy.

Section 839 provides:  "Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein." Mendez told Salazar, to bring the ATM 45, and drove Salazar to South Gate to find the U-Haul truck. Section 839's reference to "orally summon one" to aid in making an arrest refers to the physical act of taking the offender into custody.  (*People v. Campbell* (1972) 27 Cal.App.3d 849, 854.)  Mendez did not "orally summon" Salazar to make a citizen's arrest.  The car chase and shooting occurred hours after the burglary in another town. Appellant's reliance on *People v. Quesada* (1980) 113 Cal.App.3d 533 is misplaced and discusses reasonable force to prevent a crime, not reasonable force make a citizen's arrest.  (*Id.*, at p. 539.)

Appellants argue that section 26050 authorizes "the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest."  Section 26050 does not authorize a person to brandish or use a firearm in such a manner that it results in excessive force to accomplish the arrest. (*People v. Piorkowski, supra,* 41 Cal.App.3d at pp. 328-330  [discussing former section 12031, subdivision (i)].)  We accordingly reject the argument that the trial court had a sua sponte duty to instruct on involuntary manslaughter, i.e., that the killing was in the commission of a lawful act without due caution and circumspection. (See *People v. Butler*  (2010) 187 Cal.App.4th 998, 1007-1008 [collecting cases on criminal negligence].)

Appellants argue that the self-help remedy of retrieving stolen property with deadly force is analogous to imperfect self-defense of property and supports an instruction on involuntary manslaughter.  Deadly force may be used to defend property

8

but only where the person taking the property is committing a forcible or atrocious crime. (*People v. Ceballos* (1974) 12 Cal.3d 470, 478-479.) In *People v. Ceballos,* which was decided a month after *People v. Piorkowski,* our Supreme Court held that deadly force may not be used by a private citizen to prevent a burglary where the character and manner of the offense does not reasonably create fear of serious bodily harm. (*Id.*, at p. 479.) Appellants were not present when Mendez's house was burglarized and there was nothing about the nature of the burglary that created a reasonable fear of serious bodily harm. (*Ibid.*) Randy posed no risk of harm but was chased and shot hours after the burglary. "[S]trong public policy considerations disfavor[] self-help through force or violence, including the forcible recapture of property. . . ." (*People v. Tufunga* (1999) 21 Cal.4th 935, 938.) The trial court had no sua sponte duty to instruct on involuntary manslaughter and there was no due process denial of appellants' right to present a complete defense. (*People v. Rogers* (2006) 39 Cal.4th 826, 872.) But for the alleged instructional error, it is not reasonably probable that appellants would have received a more favorable verdict. (*People v. Breverman*, *supra,* 19 Cal.4th at p. 177.)

### *Aider and Abettor Liability for Premeditated Attempted Murder*

Mendez argues that the evidence does not support the finding that he aided and abetted the attempted murder of Christine or that it was premeditated and deliberate. Salazar was the only one who shot at the truck, yet Salazar was acquitted of attempted premeditated murder. Based on Mendez's motive, planning, and conduct, the jury reasonably concluded that Mendez acted with premeditation and deliberation. The jury was instructed: "When the crime charged is either murder or attempted murder, the aider and abettor's guilt is determined by the combined acts of all the participants as well as that person['s] own mental state. If the aider and abettor's mental state is more culpable than that of the actual perpetrator, that person's guilt may be greater than that of the actual perpetrator. Similarly, the aider and abettor's guilt may be less than the perpetrator's, if the aider and abettor has a less culpable mental state." (CALJIC 3.00)

9

As in any substantial evidence case, the inquiry on appeal is not whether guilt was established beyond a reasonable doubt but whether there was substantial evidence to support the jury finding that Mendez aided, promoted, encouraged, instigated or facilitated the shooting.[5] (*People v. Redmon* (1969) 71 Cal.2d 745, 755.) All conflicts in the evidence and questions of credibility are resolved in favor of the verdict, and every reasonable inference the jury could draw from the evidence is indulged. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) A reversal for insufficient evidence is not warranted unless it appears that upon no hypothesis whatever there is sufficient substantial evidence to support the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Mendez was tried on an aider and abetter theory which required that the prosecution prove that Mendez had knowledge of Salazar's unlawful purpose, intended to assist Salazar, and instigated, promoted, or facilitated the murder and attempted murder. (*People v. Prettyman* (1996) 14 Cal.4th 248, 259; *People v. Jurado* (2006) 38 Cal.4th 72, 136.) Mendez provided the handgun and told Salazar to bring it. Mendez hunted for the U-Haul truck and instigated the car chase. When Salazar displayed the handgun, Mendez slowed down for a second and Sanchez told him to "keep going" and to catch up. Premeditation and deliberation can occur in a brief interval. The test is not time but reflection. (*People v. Sanchez* (2001) 26 Cal.4th 834, 849.)

Mendez sped up, closed the gap, and bumped the rear of the U-Haul truck so that Salazar could make an accurate shot. Reaching out the window, Salazar aimed and shot three times. After the truck crashed, Mendez backed up and sped off. Mendez's failure to stop the chase and flight with Salazar was strong circumstantial

---

[5] The trial court instructed: "A person aids and abets the commission of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime; and [¶] (3) By act or advice, aids, promotes, encourages or instigates the commission of the crime." (CALJIC 3.01.)

evidence that Mendez and Salazar acted in concert. (See e.g., *People v. Jones* (1980) 108 Cal.App.3d 9, 15.)

Mendez claims that the attempted murder was not premeditated and deliberate, but there is overwhelming evidence of planning, motive, and a cold and calculated decision to chase and shoot the truck occupants. (See e.g., *People v. Gonzalez* (2012) 54 Cal.4th 643, 663.) Angry about the burglary, Mendez refused to let the police in his house and told the police he did not know the identity of the burglars even though the neighbor said that it was Christina and Quennie. Mendez recruited Salazar, told him to bring the handgun, and chased Randy and Christine through stop signs and a stop light. After Mendez bumped into the back of the U-Haul truck, he maneuvered the Expedition into position so that Salazar could fire three shots, one of which was lethal.

There is no requirement that the aider and abettor personally deliberate and premeditate the attempted murder. (*People v. Favor* (2012) 54 Cal.4th 868, 879.) "Because section 664(a) 'requires only that the attempted murder itself was willful, deliberate, and premeditated' [citation], it is only necessary that the attempted murder 'be committed by one of the perpetrators with the requisite state of mind.' [Citation.] . . . [¶] Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberated and with premeditation." (*Id.*, at p. 880.)

*Conclusion*

Appellants argue that the cumulative effect of the alleged errors denied them a fair trial. As our Supreme Court has stated on several occasions, " ' " '[a] defendant is entitled to a fair trial but not a perfect one.' " ' " (*People v. Marshall* (1990) 50 Cal.3d 907, 945.) Here none of the purported errors, either singularly or

11

cumulatively, prejudiced appellants or affected their due process right to a fair trial. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1056,)

The judgments are affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

Robert J. Higa, Judge

Superior Court County of Los Angeles

_____

Verna A. Welfald, under appointment by the Court of Appeal, for Defendant and Appellant Mendez.

Jonathan Edward Demson, for Defendant and Appellant Salazar.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James W. Bilderback II, Supervising Deputy Attorney General, William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.