State *v.* Moore.

————•◄●►•————

## THE STATE *vs.* JAMES M. MOORE.

The mere act of setting spring guns on one's own premises for their protection is not unlawful in itself, but the person doing it may be responsible for injuries caused thereby to individuals, and may be indictable for the erection of a nuisance if the public are subjected by it to any danger.

What a man may not do directly he may not do indirectly. A man may not therefore place instruments of destruction for the protection of his property where he would not be authorized to take life with his own hand for its protection.

The right to take life in the defense of property, as well as of person and habitation, is a natural right, but the law limits its exercise to the prevention of forcible and atrocious crimes, of which burglary is one.

In the absence of any statutory provision making it burglary to break and enter a shop in the night season with intent to steal, and by the early strict rules of the common law, a man may not take life in prevention of such a crime.

The habits of the people and other circumstances have however so greatly changed since this ancient rule was established, that it is very questionable whether, in view of the large amount of property now kept in warehouses, banks and other outbuildings, it should not be held lawful to place instruments of destruction for the protection of such property.

Breaking and entering a shop in the night season with intent to steal, is by our

law burglary, and the placing of spring guns in such a shop for its defence, ... be justified if a burglar should be killed by them.

The guns would however have constituted a nuisance if they cause ... ... to passers by in the street.

But the annoyance to the public must be of a real and substantial ...

Where, upon a prosecution for a nuisance, the jury, by a special ver... ... the defendant placed spring guns in his shop for its protection a... ... that the guns were loaded with large shot and so placed as to disc ... tents obliquely towards the highway, the traveled path of which ... ... and a half from the shop; that the shop was lathed and plaster ... ... and double boarded on the outside, but that it was possible that ... ... might pass through the boards at places where by reason of the ... them there was not a double thickness of boards; and that the t ... ... were annoyed and apprehensive of harm from the guns; it was ... ... not appear that there was such real and substantial danger to the public as to warrant a conviction.

INFORMATION for a nuisance by the defendant in placing spring guns in his shop for its protection against burglars, by reason of which the public were endangered in passing by upon the adjacent highway. The jury returned the following special verdict.

In this case the jury find the following facts:—

The defendant owned and occupied a blacksmith's shop adjoining a public highway in Colebrook, about one and a half rods from the traveled path. It had been entered by burglars, and subsequent efforts made to enter it again. The defendant, for the purpose of protecting his premises, placed at divers times three loaded guns, loaded with powder and large shot, when leaving and locking the shop at night, with strings attached to the triggers, and extending to other objects, with intent that persons who should enter or attempt to enter said shop in the night season should fire said guns and kill or injure themselves thereby. One or more of said guns were pointed obliquely towards the said highway. The shop was lathed and plastered on the inside, and double boarded on the outside, but it was possible that scattering shot might pass out through the places where the boards by reason of cracks between them did not make a double thickness of boarding. The traveling public having occasion to pass upon said highway were annoyed and alarmed, and apprehensive of danger

State *v.* Moore.

from an accidental discharge of said guns, and some of
remonstrated with the defendant. The defendant gav
tice of the placing of said guns to the public. The defer
had no intent to endanger or annoy the public on said
way, but acted with the sole purpose and intent of prote
his property in said shop from burglars, supposing he 1
lawful right so to do ; and upon the commencement of
prosecution he desisted from placing said guns as be
And thereupon the jury find, that if upon the facts so fou
verdict and judgment of guilty can be legally rendered,
defendant is guilty ; but if said facts will not authorize in
a verdict and judgment of guilty, then we find the defen
not guilty, and submit the question as a question of law to
court.

The questions of law arising on this verdict were reserv
for the advice of this court.

*Sedgwick*, state attorney, and *Goodwin*, for the state, ci
1 Hale P. C., 473 ; Foster C. L., 291 ; 2 Bishop Crim.
§§ 558, 597 ; 1 Russell on Crimes, 519, 545 ; 3 Chitty Cri
Law, 627, 641, 647 ; 4 Bla. Com., 167, 181 ; *State* v. 1
*gan*, 3 Ired. (Law,) 186.

*Hall*, with whom was *Hitchcock*, for the defendant, cite
East P. C., 219, 271 ; 1 Hawk. P. C., 108 ; Foster C.
273 ; 1 Russell on Crimes, 550 ; 1 Hale P. C., 445, 481, 4
2 Swift Dig., 284 ; *Johnson* v. *Patterson*, 14 Conn., 1 ; *Sa*
v. *Blackburn,* Mood. & Malk., 502 ; *Blackman* v. *Simmon*
Car. & P., 138 ; *Brock* v. *Copeland*, 1 Esp., 203 ; *Ilott*
*Wilkes*, 3 Barn. & Ald., 304 ; *U. States* v. *Wiltberger*
Wash. C. C., 515, 521 ; *Gray* v. *Coombs*, 7 J. J. Marsh., 4

BUTLER, J. It is not easy to see how the mere act of s
ting spring guns on his own premises by the defendant can
holden unlawful in itself. That such an act could not be
holden seems to have been admitted in the leading case of
*Ilott* v. *Wilkes*, 3 Barn. & Ald., 304. But it may neverthe-
less be true that he may be responsible for any injury occe
sioned thereby to individuals ; and be indictable for th

ion of a nuisance, if the public were thereby subjected to
*langer* and consequent annoyance.

iat a man may not do directly, he may not do indirectly.
the rules of the common law the defendant could not, if
nt, have discharged the guns which he placed in his shop
s own direct agency, against a thief, who had broken and
ed for the purpose of stealing, he certainly could not
and leave them so that the thief, if he entered, would
arge them against himself. This principle was also ad-
d by the court of King's Bench in *Ilott* v. *Wilkes*, but
ction was trespass, and the judges held that the rule did
pply where the trespasser had *notice* that the engine was
iced and the danger existed. But the fallacy of their rea-
g, in that respect, was clearly shown in this court by Judge
nan, in *Johnson* v. *Patterson*, 14 Conn., 1; and it is set-
law here, that if the wrong or guilt of the trespasser or
is not such as to justify the injury, if inflicted directly,
a not be justified because inflicted indirectly, and by the
ing agency of the wrong doer.

ie first point made by the defendant in this case must
efore turn on the question, whether a man may take the
)f any one who attempts to commit a felony, and therefore
thief who attempts to break and enter a *shop* or out-house
ie night season with intent to steal. In this case, from the
we take of the nature of the offense charged against the
mer, a determination of the question is not necessary, but
has been raised and fully argued, and is of great practi-
nterest, we will consider and settle it.

is clear that in the absence of any statutory provision
ing the offense of breaking and entering a shop in the
t season *burglary*, and by the early and strict rules of the
mon law, a man may not take life in prevention of such a
ie. Those rules recognize a right in every man to defend
*property*, as well as person and habitation, by taking the
of the aggressor, as a *natural right;* but they also limit
restrain the exercise of that right to the prevention of a
ain class of forcible and atrocious crimes, of which break-
a shop in the night season is not one at common law.

The class of crimes in prevention of which a man may, if necessary, exercise his natural right to repel force by force to the taking of the life of the aggressor, are *felonies* which are committed by *violence and surprise ;* such as murder, robbery, burglary, arson, breaking a house in the day time *with intent to rob,* sodomy and rape. Blackstone says : " Such homicide as is committed for the *prevention* of any forcible and atrocious crime is justifiable by the law of nature ; and also by the. law of England, as it stood as early as the time of Bracton ; " and he specifies, as of that character, those which we have enumerated. No others were specified by Hale or Hawkins, who wrote before him on the Pleas of the Crown, or have been specified by any writer since. Mr. East, in his Pleas of the Crown, and Mr. Foster, from whom Judge Swift quotes the law on this subject in his Digest, (vol. 2, page 283,) state the rule thus : " A man may repel force by force in defense of his person, habitation or property against one who manifestly intends or endeavors by *violence and surprise* to commit a known felony, such as murder, rape, robbery, arson, burglary and the like, upon either. In these cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing it will be justifiable self defense." 1 East P. C., 271 ; Foster C. L., 259. Neither of these writers specifies any other crimes than those enumerated, and both except from the list simple theft, and even an attempt to pick a pocket. No writer has enumerated breaking and entering a shop as one of that class of crimes. If it was technically burglary at common law, it would be included, but it is not. " To break and enter a *shop*, not parcel of the mansion house, in which the shop keeper never lodges, but only works or trades there in the day time, is not burglary, but only larceny." 1 Hale P. C., 557, 558, cited in 1 Tomlin's Law Dict., 278. Nor have we been referred to any case in England where it has been holden that life might be taken in defense of property in a shop ; nor any in this country, with the single exception of *Gray* v. *Coombs,* 7 J. J. Marshall, 478 ; and in that case the court did not hold that the offense was burglary, or within the class of

ies to prevent which life may be taken by strict letter of
:ommon law; but rather that " the time and circumstan-
onstituted a case of necessity, that legitimated the means
rted to." ₅We are satisfied, therefore, that by the strict
r of the common law a man may not take life in defense
roperty in a shop, and therefore may not justify a homi-
ciue committed by placing spring guns therein.

But these rules of the common law were originally founded
on reasons and adapted to circumstances which do not now
exist, and it is a question of great importance and deserving
serious consideration, whether that change of circumstances
has not created a necessity for an extension of a right to take
life in defense of property in a shop. The offense is a felony,
and has all the elements of a felony by violence and surprise
that burglary has, except that it is presumptively committed
when no person is present, and unaccompanied by danger of
personal injury to the owner or his family or guests. But
if a reason originally for the distinction between a man-
house and a shop, is now to some extent practically dis-
rded, for burglary may be committed in a barn, wood
e, or even smoke house and hen roost, though separate
tures, and unconnected with the dwelling house, and un-
sed by a common fence, if in close proximity, and "in
nature serviceable in respect to the abode;" and in
cases no danger of personal collision exists. 1 Bishop
C., sec. 171. So doubtless, in the olden times, all the
ibles were contained in the castle (dwelling-house and
lage) for protection, and shops were few and did not re-
such protection. Now our banks, stores, warehouses,
ifactories and shops contain in large quantities our most
ible property and goods, and those which are the most
ily transported, and least easily identified and recovered.
it certainly seems very absurd to permit a man to protect
moke house and hen roost, by taking the life of the noc-
al thief, and deny him the right to defend a bank, or a
full of costly jewelry or valuable silks, by the same
is. We are aware that writers on the criminal law deem

ancient common law distinctions grow *general rules* which give that certainty, and operate to establish practical justice; and that changes and innovations should be made by legislation rather than judicial decision; and we admit the force of their reasoning. Still, it is a question whether the great quantity and value of property contained in what the law terms out-houses, the ease with which it may be transported, the great extent of our country and the means of escape by railroads, and the opportunity to dispose of stolen property and enjoy its fruits undetected in distant states and cities, and the fact that property so held is exposed, not only to the ordinary number of criminals incident to our own population, but to great numbers who escape or are induced to emigrate from other countries, do not constitute the offense an aggravated and exceptional one which in the absence of legislation should be holden to be such an atrocious felony as to justify the use of spring guns for its prevention. The court so held in the case cited from the Kentucky Reports; and an obvious leaning that way is observable in other cases in this country.

The taking of life by spring guns or otherwise is confessedly lawful, by the common law, and now in England by statute, to prevent a *burglary;* and the breaking and entry in the night season of " a shop in which goods, wares and merchandize are deposited," was by express statutory provision made burglary, identical in character and punishment with burglary in a dwelling-house, at an early period in our history. In the edition of the statutes published in 1808, at page 297, there is a statute entitled, " An act for the punishment of certain atrocious crimes and felonies," and the first clause of the statute is in these words; viz., " that whosoever shall commit burglary by breaking up any dwelling-house, *or shop wherein goods, wares or merchandize* ;*are deposited,*" &c. The compiler in a note informs us that the clause was originally passed in 1650, and it is therefore among the earliest acts of the state; and in the case of *The State* v. *Carrier*, 5 Day, 131, decided in 1811, the fact that the statute had " extended the crime of burglary to the breaking and entering of a shop," was admitted by all the judges. And burglary, whether in a

ng-house or shop under the ancient statute, was punish-
)r the third offense by death.

1e act referred to, as found in the edition of 1808, several
2s for which the same punishment was provided were
ced in a single section. In 1821 the revisors separated
into distinct sections, and in so doing placed burglary
: section and the breaking and entry of a shop in an-
adding to the latter the words, " store, warehouse and
use, *whether parcel of any mansion house or not,"* but
ed the same punishment, viz., three years' imprisonment,
;h. It is apparent from the words, " whether parcel of
ansion house or not," and the similarity of the punish-
that no change in the character of the offense was in-
l, and such has been the understanding of the profession
1e courts. In the revision of Swift's Digest by Judge
n, the offense is treated as burglary, (vol. 2, page 330,)
· our forms the word " burglariously " is used in informa-
1pon the statute. In the act of 1830 respecting crimes,
unishment of burglary was increased to a maximum of
2ars, and the breaking and entering a shop to four years,
at distinction in the punishment has not been regarded
:s changing the nature of the offense. In 1843, in the case of
*The State* v. *Lewis*, 16 Conn., 32, it was distinctly recog-
1ized and treated as burglary.

1aking and entering the shop in question in the night
1 with intent to steal therefrom would have been by our
urglary ; and as by the settled rules of law life may be
1 to prevent a burglary, the placing of the guns in the
was an act which the defendant could have justified, if
.eath of a burglar had been thereby occasioned.

e are also satisfied that if the guns had actually been dan-
1s to the public who had occasion to pass the highway
would have constituted a nuisance. The statute relative
1isances in highways, embraces specifically objects placed
.cts done within its limits. But other acts committed
mitted upon the adjoining land by the owner thereof, which
langer and annoy travelers, are nuisances at common law.
overhanging tree whose limbs actually interfere with the

State *v.* Moore.

use of the way, or are rotten and liable to fall, is a nuisance, and the limbs may be lopped. So it is a nuisance to suffer the highway to be incommoded or travelers endangered by adjoining foul ditches, or to permit a dangerous and ruinous house to stand upon it which is liable to fall into it and injure *passengers*, or to keep gunpowder in dangerous quantities, near a public street, *carelessly; (People* v. *Sands,* 1 Johns., 78 ; *Anon.* 12 Mod., 342 ; *Myers* v. *Malcolm,* 6 Hill, 292 ;) or to do any other act outside of the highway, which endangers the public who have occasion to pass over it, and who are entitled to the same protection from danger and annoyance while there as when at their respective homes.

Doubtless the annoyance must be of a real and substantial nature, for " the fears of mankind though they may be reasonable ones will not create a nuisance." 3 Atk., 750. But placing a loaded gun so as to range over a highway, cocked, and with strings attached to the trigger, so that it may be discharged by a cat or rat, or any other object coming in contact with the string, and sufficiently near and unprotected to inflict injury if any one should then be within its range upon the highway, creates a real and substantial danger, to which passengers on a highway should not be subjected.

We are not however satisfied that the facts found by the special verdict will authorize a judgment against the prisoner. It is found that scattering shot might pass between the cracks of one thickness of the boarding, and through the other to the outside. But it is not found that they would pass through with sufficient force to inflict injury, or even to cross the intervening space between the shop and highway. It is not therefore sufficiently found that the apprehended danger to the public was real and substantial, and judgment must be rendered for the defendant.

In this opinion the other judges concurred.