[No. 32967.   Department Two.   September 1, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. JEROME A. NYLAND, *Appellant*.[1]

[1]Reported in 287 P. (2d) 345.

*Orville E. Peebles* and *James J. Lawwill*, for appellant.

*Robert L. Charette* and *James J. Solan,* for respondent.

ROSELLINI, J.—The appellant was charged in count I with the murder of Violet Louise Nyland, his wife, and in count II with the murder of Albert Hakkarainen. He was convicted of murder in the first degree under count I and murder in the second degree under count II, and was sentenced to life imprisonment for the first offense and to a maximum of twenty years in the penitentiary for the second, the sentences to run concurrently. From this judgment, he appeals.

Error is assigned to the court's refusal to give requested instructions which embodied appellant's theory of justification, and to the giving of an instruction wherein the jury was told that, as a matter of law, the appellant's acts were neither excusable nor justifiable.

Appellant admitted that he shot his wife and her companion on October 17, 1953, while they were sitting in an automobile parked in front of the Blue Eagle Tavern in Aberdeen. The theory of his defense, on which the trial court refused instructions, was that the killings were necessary to prevent the commission of a felony against him, inasmuch as he had reasonable cause to believe that his wife and Hakkarainen were about to commit an act of adultery,

which, under our cases, is a crime against the unoffending spouse.

The statute on which appellant relies is RCW 9.48.170 (Rem. Rev. Stat., § 2406), which reads:

"Homicide is also justifiable when committed either—

"(1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person and there is imminent danger of such design being accomplished; or

"(2) In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling or other place of abode, in which he is."

This is but a statutory declaration of the common law. *State v. Meyer,* 96 Wash. 257, 164 Pac. 926. While it is true that the statutory crime of adultery, unknown to the common law, is a felony by reason of the fact that it is a penitentiary offense, it is not a crime of violence and is not the type of felony which will justify the taking of human life.

"The class of crimes in prevention of which a man may, if necessary, exercise his natural right to repel force by force to the taking of the life of the aggressor, are *felonies* which are committed by *violence and surprise*; such as murder, robbery, burglary, arson, breaking a house in the day time *with intent to rob,* sodomy, and rape. Blackstone says: 'Such homicide as is committed for the *prevention* of any forcible and atrocious crime is justifiable by the law of nature; and also by the law of England as it stood as early as the time of Brackton;' and he specifies, as of that character, those which we have enumerated. No others were specified by Hale or Hawkins, who wrote before him on the Pleas of the Crown, or have been specified by any writer since." *State v. Moore,* 31 Conn. 479, quoted with approval in *State v. Marfaudille,* 48 Wash. 117, 92 Pac. 939 (1907).

The true reason of the rule, as we said in the *Marfaudille* case, is stated in *United States v. Gilliam,* Fed. Cas. No. 15205a:

"The law is that a man may oppose force with force in defense of his person, his family or property against one who manifestly endeavors by violence to commit a felony, as

murder, robbery, rape, arson or burglary. *In all these felonies, from their atrocity and violence, human life either is, or is presumed to be in peril."*

█ We have consistently held, in cases decided since the enactment of the statute, that a killing in self-defense is not justified unless the attack on the defendant's person threatens life or great bodily harm. *State v. Blaine,* 64 Wash. 122, 116 Pac. 660 (1911); *State v. Rader,* 118 Wash. 198, 203 Pac. 68 (1922); *State v. Bezemer,* 169 Wash. 559, 14 P. (2d) 460 (1932); *State v. Spear,* 178 Wash. 57, 33 P. (2d) 905 (1934).

█ Adultery is not a crime which imperils the life of the unoffending spouse or threatens bodily harm to him. Appellant cites the case of *State v. La Bounty,* 64 Wash. 415, 116 Pac. 1073 (1911), wherein we held that adultery is not a crime against the state but against the unoffending spouse, who is at liberty to condone it. The case is no authority for the proposition that adultery is a felony committed *upon* the innocent spouse, within the meaning of RCW 9.48.170, defining justifiable homicide.

We do not, by any means, purport to sanction adulterous conduct nor to underestimate the gravity of its consequences, not the least of which is the great distress it almost inevitably produces in the mind and heart of the innocent wife or husband; but if the thoughts and emotions which it arouses are vindictive, the law has provided a means of vindication. The unoffending spouse may prosecute for adultery or he may forgive; he may obtain his release from the marriage contract and may have his civil remedy against the paramour. But in no event may he take the life of a human being, either to prevent the commission of an act of adultery or to effect his revenge upon the adulterers.

██ It is not error to refuse a requested instruction which does not correctly state the law. *State v. Bixby,* 27 Wn. (2d) 144, 177 P. (2d) 689 (1947). Hence, the court properly refused appellant's proposed instructions embodying the theory that one may be justified in killing to prevent an act of adultery.

In one of its instructions, the court defined first degree murder as "the killing of a human being by another, neither excusable nor justifiable, with a premeditated design to effect the death of the person killed." Second degree murder was defined as "the killing of a human being, neither excusable nor justifiable, committed with a design to effect the death of the person killed, but without premeditation."

■ Appellant complains of a further instruction wherein the jury was told that there was no evidence on which it could base a finding that the shootings were either excusable or justifiable. The instruction, appellant contends, was a comment on the evidence and amounted to a peremptory instruction to find the appellant guilty. These arguments are answered in our opinion in *State v. Hartley*, 25 Wn. (2d) 211, 170 P. (2d) 333 (1946). The defendant in that case had murdered his wife with a bolo knife. He was convicted of murder in the first degree and sentenced to death. As in this case, there was no evidence which would bring his act within the provisions of the statutes relating to excusable and justifiable homicide. After defining first degree murder in substantially the same words as were used by the trial court in this case, the court instructed the jury that there was no evidence on which it could base a finding that the killing was excusable or justifiable. We held that such an instruction was neither a comment on the evidence nor a direction to the jury to find the defendant guilty, saying:

"There being no evidence from which the jury could find that the homicide was either excusable or justifiable, the court properly decided as a matter of law that those issuable elements of the crime charged could not, and should not, be considered by the jury. That portion of instruction No. 6 cannot be considered as a comment on the evidence, because no evidence as to those features was presented."

The instruction was not equivalent to a directed verdict. Although the jury was not allowed to consider whether the killings were excusable or justifiable, under the instructions given, it was free to determine whether the killings were

perpetrated by the appellant and, if so, whether they were premeditated. There was no error in the giving of this instruction.

Finally, appellant claims that the trial court abused its discretion by admitting in evidence photographs of the dead bodies of the victims, taken in the mortuary shortly after the shootings. Testimony of the coroner who examined the bodies, he contends, was sufficient to establish the fact and cause of their deaths, the course of the bullets through their bodies, and the nature of the wounds. The photographs had no additional probative force, according to his argument, and were offered solely for the purpose of inflaming the jury.

Four photographs were offered, but, upon objection of the appellant, the court admitted only two of them. The coroner, in describing the wounds inflicted upon the two victims, referred to the photographs. The photographs are, if anything, less disturbing than the verbal description of the injuries given by the examining physician. The fact that they might tend to prejudice or inflame the jury is not a sufficient objection if the pictures are otherwise competent. *State v. Gaines*, 144 Wash. 446, 258 Pac. 508 (1927), followed in *State v. O'Donnell*, 191 Wash. 511, 71 P. (2d) 571 (1937); *State v . O'Donnell*, 195 Wash. 471, 81 P. (2d) 509 (1938), and *State v. Clark*, 21 Wn. (2d) 774, 153 P. (2d) 297 (1944). Appellant does not contend that the pictures are inaccurate representations of the bodies as they appeared shortly after the shootings.

Photographs of a deceased person are competent evidence for the purpose of having an examining physician identify the body which he examined. *State v. Hunter*, 183 Wash. 143, 48 P. (2d) 262 (1935).

We have encouraged the use of photographs to aid the jury in understanding the physical facts relevant to the case. *Kelly v. Spokane*, 83 Wash. 55, 145 Pac. 57 (1914). Their admission or rejection lies largely in the sound discretion of the trial court; and in the absence of a showing of abuse of discretion, the trial court's ruling will not be disturbed on appeal. *State v. Hardamon*, 29 Wn. (2d) 182, 186 P. (2d) 634 (1947).

The fact that the trial court admitted in evidence only one photograph of each of the bodies indicates that, in exercising its discretion, it had in mind the legitimate interests of both the state and the appellant. The evidence was strong that the murder of Violet Louise Nyland, if not of Albert Hakkarainen, was premeditated. The jury nevertheless decided that the death penalty should not be imposed, and there is nothing to indicate that it was influenced by passion or prejudice in reaching its verdict. The assignment of error is without merit.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

[1] Reported in 287 P. (2d) 325.