# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54329-0-II |
| Respondent, | |
| v. | |
| BRUCE FRANK FANNING, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Bruce Fanning appeals his conviction for murder in the second degree after he shot and killed Nathaniel Rosa, who had broken into Fanning's home. Fanning argues that the trial court made several errors in instructing the jury on the defense of justifiable homicide. He argues that the court erred in (1) limiting the consideration of the felony that he was resisting to burglary in the first degree, (2) removing language from the pattern jury instructions on justifiable homicide, (3) failing to instruct the jury on the permissible inference of intent to commit a crime based on unlawful entry, and (4) failing to instruct the jury that justifiable homicide is a defense to manslaughter.

The State argues that based on the facts of the case, the court did not err on any of these points.

We conclude that the trial court did not err except in failing to instruct the jury that justifiable homicide is a defense to manslaughter, but that error was harmless beyond a reasonable doubt. Accordingly, we affirm.

FACTS

I.    THE INCIDENT AND INVESTIGATION

Fanning owned two houses that were next door to each other on East Trails Road; one at 1520 where he ran his business, and the other at 1500, where he slept.  In the mornings, Fanning walked from one house to the other to start work.  On the morning of April 1, 2017, Fanning called 911 to report that he shot and killed a man who had broken through the front door to his work house and was in the shower.  While waiting for officers to arrive, he described the incident to the dispatcher:

> I said, 'Oh, shit somebody's in there.'  So, I came in—I came in and I heard water running.  I thought the guy left and—and rambled the place, robbed it or something and then left the water running for some reason.  I went in there and the guy was there.  I said, 'Get the hell out of here son of a bitch.'  And he came out and said some fucking thing.  He look[ed] intoxicated to me.  He looked intoxicated to me or something.  I said, 'Oh, yeah. You son of a bitch.'  So, I went—I went next door and grabbed my gun.  I ran all the way over there.  He was still in there when I got back.
>
>         . . . .
>
> So, I shot him.  So, I shot him.  I don't get it.

Ex. 228, at 6.

When officers arrived, they discovered a splintered door frame and a shoe print on the door, indicating that it had been kicked in.  Rosa's blood and fingerprints were found at other entrances to the home, including the garage door, windows, and the back door.  The officers found a man, later identified as Rosa, naked and deceased in the bathtub and shell casings on the floor.  Fanning was taken into custody.

Prior to the confrontation resulting in the shooting, Rosa and his friends had retired to Rosa's friend's house after a night out.  The friend's house was located at 1590 East Trails Road, which was two houses away from Fanning's work house.  The house appeared very similar to

Fanning's from the outside, and had an identical internal layout to Fanning's work house. The following morning at around 5 or 6 a.m., Rosa, who had been drinking and smoking marijuana, left his friend's house. Eventually, Rosa pushed down and scaled the chain link fence surrounding Fanning's work property, kicked the door in, and got into the shower. The autopsy confirmed that Rosa's blood alcohol concentration was twice the legal limit, and that he also had tetrahydrocannabinol (THC) in his system.

Upon arriving at the police station, the police interviewed Fanning, who described the incident:

> [Fanning]: I hear water running and I—so I detect . . . somebody's there. I said 'Get the fuck out of my house.'
> . . . .
> [Fanning]: And the guy—the guy opens—opens the curtain and he—he says something like he was messed up or something. I thought intoxicants or something.
> . . . .
> [Detective]: [Do] you remember what he said?
> [Fanning]: No. I—I don't. He said something—I couldn't understand what the hell he said. Something weird, yeah.
> . . . .
> [Fanning]: So I said, "Ok pal." So like got me okay I knew this was something was going on so I grabbed my gun. I grabbed my gun and I I hit it.
> . . . .
> [Detective]: Ok [the man in the shower] just stuck his head out.
> [Fanning]: Yeah I kind of seen his hair and his face for a split second. He mumbled something. I said, "Okay we'll find out." I grabbed the gun
> [Detective]: So did you have the gun with you?'
> . . . .
> [Fanning]: No. He had plenty of chance to run. I thought for sure I'd get back and he'd be gone but he was still okay fucker you're done.
> [Detective]: Okay. So when you came back what did you do?
> . . . .
> [Detective]: You came back and he's still in the shower.
> [Fanning]: Yeah.
> [Detective]: Did he say. . .
> [Fanning] I shot him.
> [Detective]: Okay. Did he say anything at that time?
> [Fanning]: No.
> . . . .
> [Detective]: . . . what'd you think at that time?

[Fanning]: I was scared. I thought I was gonna get shot or something. I had no idea. I was scared out of my mind.

. . . .

[Fanning]: How do I know that he's not gonna, you know, he's an intruder. I'm scared that he's g he's gonna shoot me. My point was I wanted to shoot before I got shot.

. . . .

[Detective]: So what you're . . . saying then is that, uh, you felt he was a threat.

[Fanning] Of course.

Ex. 229, at 13-25.

The State charged Fanning with one count of murder in the first degree.

II.    TRIAL

At trial, Fanning's primary defenses were diminished capacity and justifiable homicide. Dr. David Dixon, a forensic psychologist who evaluated Fanning, testified that Fanning had high anxiety and a high level of concern or obsessiveness over his house being broken into. Dr. Dixon opined that Fanning "essentially had been traumatized by past experiences." 5 Report of Proceedings (RP) at 631. He testified that Fanning was "hypervigilant," "easily startled," "panic prone," "slow to be able to assess . . . non routine tasks, [and] tended to be slow at planning and decision-making." 5 RP at 635.

Fanning testified about the incident as follows: When he went to his work house in the morning, he saw that it had been broken into. In that house, he kept boxes of merchandise for his online business, and when he walked through the front door, he noticed that a couple boxes were knocked over. He heard water running and thought that the burglar had left the water running for some reason, so he walked to the bathroom and saw the shower curtain completely closed. He yelled at the person in the shower, telling him to get out of his house. Rosa responded in an aggressive manner, but Fanning couldn't discern specific words. At some point, Rosa said, "Fuck you. I'll kill you." 6 RP at 799. In response, Fanning walked back to his other house and stayed

4

there thinking about what to do. He then decided to go back to his work house, because he had nowhere else to go and figured the intruder would be gone, but he took his gun with him "just in case." 6 RP at 808. Fanning testified that the only phone capable of dialing out of the house was located in the office, further down the hallway than the bathroom, requiring him to walk past the bathroom in order to call 911.

When Fanning entered the work house, he did not hear water running and everything was quiet. When he walked past the bathroom on the way to his office, he stopped and stood in the doorway because he noticed the shower curtain was still closed. He then saw something "poking through the curtain which [he] thought was a gun." 6 RP at 812. In a split second, "something came over [him]" and he thought he was going to die so he shot three times through the curtain. 6 RP at 812.

III.    INSTRUCTIONS

A.    Justifiable Homicide Instructions

After the close of the evidence, the parties engaged in an extensive discussion about the jury instructions. The court accepted the State's proposed instructions for the lesser included offenses of manslaughter in the first and second degree over Fanning's objection. Fanning proposed instructions for justifiable homicide, one for self-defense and one for defense of others based on 11 *Washington Practice: Washington Pattern Jury Instruction: Criminal* 16.02, at 261 (5th ed. 2021) (WPIC), and one for resistance to a felony based on 11 WPIC 16.03, at 267. The version of WPIC 16.02 adopted by the court and numbered as instruction 21 omitted the strikethrough language and added the underlined language; it read:

5

| Fanning's Proposed Instruction | Trial Court's Instruction[1] |
|---|---|
| It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.<br><br>Homicide is justifiable when committed in the lawful defense of the slayer when:<br><br>(1) The slayer reasonably believed that the person slain intended to commit a felony or to inflict death or great personal injury;<br><br>(2) There was imminent danger of such harm being accomplished; and<br><br>(3) The slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.<br><br>The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty. | It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.<br><br>Homicide is justifiable when committed in the lawful defense of the slayer when:<br><br>1) the slayer reasonably believed that the person slain intended to ~~commit a felony or~~ inflict death or great personal injury;<br><br>2) <u>the slayer reasonably believed that</u> there was imminent danger of such harm being accomplished; and<br><br>3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.<br><br>The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty. |

Clerk's Papers (CP) at 204 (Fanning's Proposed Instr.); CP at 364 (Trial Court's Instr. 21).

---

[1] The trial court's instruction was identical to WPIC 16.02. The strikethrough and underlined language by the trial court is bracketed in the pattern jury instruction, which suggests that language is optional depending on the facts of the case. *See* WPIC 16.02.

To support the inclusion of the "to commit a felony" language, Fanning argued that he reasonably believed that Rosa intended to commit attempted burglary in the first degree. 8 RP at 1174. In regard to the resisting an attempted felony, he argued that the kicking in the door and making a threat is a substantial step in committing attempted burglary in the first degree.

The State discussed its concern with giving the instruction in its original form in light of the facts of the case; specifically, Fanning leaving the home after first discovering Rosa in the shower, and then returning to shoot him. The prosecutor was worried that the instruction "suggests to the jury that if Mr. Rosa . . . intended to commit a felony, that it was justifiable to shoot and kill him without respect to whether or not any felony he might have been committing posed any danger to Mr. Fanning." 8 RP at 1167.

The court modified the self-defense instruction by removing the words "commit a felony or" from numbered paragraph one and adding the words "the slayer reasonably believed that" to numbered paragraph two. CP at 204; CP at 364. Fanning objected to the court's modification of the WPIC 16.02 instruction.

Fanning also proposed the following version of WPIC 16.03, which was adopted by the court and numbered instruction 22, but without the strikethrough language:

| Fanning's Proposed Instruction | Trial Court's Instruction[2] |
|---|---|
| It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.<br><br>Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer or in the presence of the slayer or upon or in a dwelling or other place of abode in which the slayer is present.<br><br>The slayer may employ such force and means as a reasonable prudent person would use under the same or similar conditions as they reasonable appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time and prior to the incident.<br><br>The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty. | It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.<br><br>Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer ~~or in the presence of the slayer or upon or in a dwelling or other place of abode in which the slayer is present~~.<br><br>The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time and prior to the incident.<br><br>The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty. |

CP at 218 (Fanning Proposed Instr.); CP at 365 (Trial Court's Instr. 22).

The trial court omitted the strikethrough portion over Fanning's objection.

B.      Instruction Defining "Felony"

Fanning proposed a jury instruction defining "felony" that initially included attempted burglary in the first degree but omitted the completed crime of burglary in the first degree. The proposed instruction also included residential burglary, attempted residential burglary, burglary in

---

[2] The trial court's instruction identical to WPIC 16.03. The stricken language by the trial court is bracketed in the pattern jury instruction, which suggests that language is optional depending on the facts of the case. *See* WPIC 16.03.

the second degree, and attempted burglary in the second degree. The trial court found that the evidence did not support a self-defense instruction based on the resistance of the felonies of simple burglary or residential burglary. The trial court ultimately defined burglary in the first degree as a felony but not the other five crimes.

The court also gave instruction 23, which read:

> Burglary in the first degree is a felony.
>
> A person commits the crime of burglary in the first degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein, and if, in entering or while in the building or in immediate flight therefrom, that person or an accomplice in the crime is armed with a deadly weapon or assaults any person.

CP at 366 (Instr. 23); 11A WPIC 60.01, at 4.

### C. Inference of Intent Instruction

Fanning also requested a jury instruction based on 11A WPIC 60.05, at 16, that reads: "

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given."

CP at 224. The court declined to give the instruction.

### D. Alternative Homicide Instructions and Justifiable Homicide

Because the court decided to instruct the jury on murder in the second degree, manslaughter in the first degree, and manslaughter in the second degree, Fanning requested that the two justifiable homicide instructions (WPIC 16.02 [adopted as instruction 21] and WPIC 16.03 [adopted as instruction 22]) include the language that justifiable homicide is a defense to both murder and manslaughter. The trial court refused to instruct the jury that justifiable homicide is a defense to manslaughter.

E.        Instruction Defining Attempted Burglary in the First Degree

The court also instructed the jury that "A person commits the crime of attempted burglary in the first degree when, with intent to commit that crime, he does any act that is a substantial step toward the commission of that crime." CP at 367 (Instr. 24); 11A WPIC 100.02, at 492. And the court defined "a substantial step" as "conduct that strongly indicates a criminal purpose and that is more than mere preparation." CP at 368; Instr. 25; 11A WPIC 100.05, at 495.

The jury found Fanning guilty of murder in the second degree. Fanning appeals.[3]

## ANALYSIS

### I.        LEGAL PRINCIPLES

"A defendant is entitled to an instruction on justifiable homicide when he or she has raised some credible evidence, from whatever source, to establish that the killing occurred in circumstances that meet the requirements of RCW 9A.16.050." *State v. Brightman*, 155 Wn.2d 506, 520, 122 P.3d 150 (2005).

> Homicide is justifiable when committed either:
>
> (1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his or her presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or
> (2) In the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is.

RCW 9A.16.050.

---

[3] Fanning died during the pendency of this appeal. His estate filed notice of substitution. In *State v. Webb*, the Supreme Court held that "when a decedent dies during the pendency of his or her appeal, that appeal may be pursued by a party substituted under the provisions of RAP 3.2." 167 Wn.2d 470, 478, 219 P.3d 695 (2009). And "[i]f the substituted party appellant is successful in showing that defendant's conviction must be reversed, then, because remand for a retrial is impossible, the conviction and all associated financial obligations must be abated." *Id*.

The first section "contemplates justifiable homicide where the defendant reasonably fears the person slain is *about to* commit a felony upon the slayer or inflict death or great personal injury, and there is *imminent* danger that the felony or injury will be accomplished." *Brightman*, 155 Wn.2d at 520-21. The second section "considers a homicide justifiable where the defendant acted in *actual resistance* against an attempt to commit a felony on the slayer. . . . Thus, RCW 9A.16.050(2) addresses situations in which a felony or attempted felony is already in progress." *Brightman*, 155 Wn.2d at 521.

When a defendant makes a threshold showing that the killing was justified, the jury instructions must make the law of self-defense or defense of another "'manifestly apparent to the average juror.'" *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996) (quoting *State v. Allery*, 101 Wn.2d 591, 595, 682 P.2d 312 (1984)), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009).

"The trial court must view the evidence from the standpoint of a 'reasonably prudent person who knows all the defendant knows and sees all the defendant sees.'" *Brightman*, 155 Wn.2d at 520 (quoting *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002)). Accordingly, the court applies both an objective and a subjective test. *Brightman*, 155 Wn.2d at 520. Once a defendant has raised some evidence to support an instruction on justifiable homicide, the State must prove absence of self-defense beyond a reasonable doubt. *Id*.

In *State v. Nyland*, the court recognized that "*felonies* which are committed by *violence and surprise*; such as murder, robbery, burglary, arson, breaking into a house in daytime *with intent to rob*, . . . and rape" are the types of felonies where someone "may, if necessary, exercise his

11

natural right to repel force by force to the taking of life of the aggressor." 47 Wn.2d 240, 242, 287 P.2d 345 (1955) (quoting *State v. Moore*, 31 Conn. 479, 483 (1863). Human life can be presumed to be in peril in the commission of these felonies. *Id*. at 243. However, the court noted that "a killing in self-defense is not justified *unless* the attack on the defendant's person threatens life or great bodily harm." *Id.* (emphasis added).

Since *Nyland*, the Supreme Court has consistently recognized that "[j]ustifiable homicide, and indeed all self-defense, is unmistakably rooted in the principle of necessity. Deadly force is only necessary where its use is objectively reasonable, considering the facts and circumstances as they were understood by the defendant at the time." *Brightman*, 155 Wn.2d at 521. Thus, in determining whether to give an instruction under either section of RCW 9A.16.050, the court is required to make "an individualized determination of necessity . . . contradicting the notion that deadly force is per se reasonable whenever a robbery or other violent felony is attempted." *Brightman*, 155 Wn.2d at 523. *See also Read*, 147 Wn.2d at 242 (stating that "a defendant must produce some evidence to establish the killing occurred in circumstances amounting to defense of life and produce some evidence he or she had a reasonable apprehension of great bodily harm and imminent danger."). The court "may conclude, as a matter of law, that the use of deadly force was unreasonable." *Brightman*, 155 Wn.2d at 523.

The standard of review when a court refuses the defendant's instruction on self-defense depends on why the court refused the instruction. *Read*, 147 Wn.2d at 243. If the trial court found no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm, an issue of fact, then the standard of review is abuse of discretion. *Id*. If the trial found no reasonable person in the defendant's shoes would have acted as the defendant acted, an issue of law, the standard of review is de novo. *Id*.

II.     FELONY DEFINITION INSTRUCTION

Fanning argues that the trial court's definition of felony, which only included burglary in the first degree, was confusing because it did not inform the jury that attempted burglary in the first degree is a felony. He contends that if the jury concluded he acted in the actual resistance of attempted burglary in the first degree, under the instructions it would have been unable to conclude he was resisting a felony. He also argues that the instruction was inadequate and diluted the State's burden of proving the absence of self-defense because it limited the jury's consideration to burglary in the first degree, when residential and burglary in the second degree, applied. And that since residential burglary and burglary in the second degree applied, the State should have had to disprove those two crimes as well.

The State argues that because instruction 22 (WPIC 16.03) stated, "'Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer,'" it properly informed the jury that the attempt to commit the felony crime triggers the justifiable homicide defense. Br. of Resp't at 13 (quoting CP at 365). The State contends that the facts of the case did not support including simple burglary or residential burglary in the definition of felony because Fanning offered no evidence to support a claim that deadly force was necessary in resistance to those crimes or the attempt to commit either of those crimes.

A.     Instruction Confusing to the Jury

In arguing that the failure to include attempted burglary in the first degree in the definition of felony was confusing to the jury and failure to include other felonies diluted the State's burden of proof, Fanning relies on *State v. Ackerman*. 11 Wn. App. 2d 304, 453 P.3d 749 (2019). The reliance is misplaced.

In *Ackerman*, the court modified the justifiable homicide instruction based on section 1 of RCW 9A.16.050 so that it said "violent felony," but then gave a separate instruction that said "robbery is a felony." 11 Wn. App. 2d at 312. On review, Division I of this court determined that "[b]y suggesting that a robbery may not satisfy the requirements of a justifiable homicide defense because it does not qualify as a violent felony, the instructions diluted the State's burden of proving the absence of self-defense beyond a reasonable doubt." *Id*. at 313. Furthermore, the court concluded that the instructions failed to make the law of self-defense manifestly apparent to the average juror. *Id*. at 315.

Here, the instructions do not contain any such flaw. The court defined burglary in the first degree as a felony. Instruction 22 stated that "[h]omicide is justifiable when committed in the actual resistance of *an attempt to commit* a felony upon the slayer." CP at 365 (emphasis added). The court also instructed the jury on the definition of attempted burglary in the first degree. The jury, therefore, was instructed that homicide was justifiable if Fanning committed it in the actual resistance of an attempt to commit burglary in the first degree, a felony. The instructions together were not confusing.

B.      Limitation of Applicable Felony to Burglary in the First Degree

Fanning further argues that the court erred in concluding that residential and burglary in the second degree are not violent felonies, and in subsequently failing to include these crimes in the definition of felony. He asserts that "[i]t has been the law since the earliest days of Washington's statehood that a person may exercise deadly force in defending against a felony, including burglary, committed against his person, his family, or his property." Br. of Appellant at 19.

14

Fanning is correct that burglary is the type of felony that the court has recognized that someone, in resistance thereof "'may, if necessary, exercise his natural right to repel force by force to the taking of life of aggressor.'" *Nyland*, 47 Wn.2d at 242 (quoting *Moore*, 31 Conn. at 483). However, as discussed above, the court is required to engage in an individualized determination of necessity. This requirement rejects "the notion that deadly force is per se reasonable whenever . . . [a] violent felony is attempted." *Brightman*, 155 Wn.2d at 523. The court must look at whether Fanning produced evidence to support the claim he subjectively believed in good faith that he was in imminent danger of great bodily harm and whether this belief, viewed objectively, was reasonable.

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1). "A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1).

As to Fanning's subjective belief, in the first confrontation, Fanning presented some evidence to support the conclusion that Rosa had entered or remained unlawfully in the work house with the intent to commit a crime. The door was forcefully broken open, Rosa had clearly attempted to enter the house through multiple means and when first confronted, Rosa responded to Fanning aggressively by saying "Fuck you. I'll kill you." 6 RP at 799. The court correctly concluded that Rosa was committing a felony. Given the evidence of Fanning's anxiety and previous experiences with his home being broken into, as well as Rosa's threat, there is some evidence that he subjectively believed that he was in imminent danger of great bodily harm at the time he first approached Rosa. But Fanning did not use force in defense of himself at this juncture.

Once Fanning left the work house, he could not have thought he was in imminent danger. The court did not abuse its discretion in determining that there was not factual support for giving the instruction allowing homicide for residential or second degree burglary.

Viewing the evidence as Fanning presented it, upon returning to the work house, Fanning discovered that Rosa was still present, Fanning still had experience of a prior break-in and still knew Rosa had threatened to kill him, though Rosa's ability to immediately act on the threat was lessened by the fact that he remained in the shower. Fanning presented evidence that he saw a gun being aimed at him through the shower curtain. At this moment, the allegation of a gun poking through the curtain is the fact that makes Fanning's belief that he was in imminent danger of great bodily harm objectively reasonable. Had Fanning returned to his living-home, retrieved his gun, come back to the work house and saw only that Rosa was still in the shower, it would not be objectively reasonable to believe that he was in imminent danger of great bodily harm. He had left once before, and there is no indication that he could not have done so again. But he was now looking at what he thought was a gun. This alleged conduct by Rosa falls squarely within the elements of burglary in the first degree.

Given the facts as Fanning knew them, burglary in the first degree is the only felony requested in the instruction that would be objectively reasonable for Fanning to resist with deadly force. Therefore, we hold that the trial court did not err in limiting the definition of a felony to burglary in the first degree.

III.    JUSTIFIABLE HOMICIDE INSTRUCTIONS

A.    Instruction 21 based on WPIC 16.02

Fanning argues that he was unable to argue his theory of the case because the trial court erred by omitting the language "intent to commit a felony" from the WPIC 16.02 instruction. Br. of Appellant at 19. Specifically, Fanning contends that he reasonably believed that Rosa intended to commit the felony of residential burglary or that he intended to kill Fanning. He contends that the cases relied on by the trial court to omit the language are distinguishable.

The State argues that the trial court did not err by modifying WPIC 16.02 to omit reference to "the victim's 'intent to commit a felony' against Fanning, because . . . the trial court also gave WPIC 16.03, which stated that 'Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer.'" Br. of Resp't at 17 (quoting CP at 364 (Instr. 21) & CP at 365 (Instr. 22)). The State contends that WPIC 16.03 adequately conveyed the law applicable to facts presented in the case, namely, Fanning killed Rosa because he thought he saw Rosa pointing a gun at him through the shower curtain, believed his life was in danger, and was resisting that felony.

An instruction based on RCW 9A.16.050(1) "contemplates justifiable homicide where the defendant reasonably fears the person slain is *about to* commit a felony upon the slayer . . . and there is *imminent* danger that the felony . . . will be accomplished." *Brightman*, 155 Wn.2d at 520-21. Again, when giving a justifiable homicide instruction, the court must make a threshold determination about whether there is some evidence that deadly force was objectively reasonable, considering the facts and circumstances as they were understood by the defendant at the time.

As discussed above, residential burglary alone without the additional evidence of Fanning's belief that Rosa was pointing a gun at him, is not, given the circumstances, the type of felony that necessitated deadly force. Based on the facts above, Fanning failed to present prima facie evidence that deadly force was justified based on residential burglary alone to necessitate a combination of residential burglary and justifiable homicide instructions. Specifically, when Fanning discovered Rosa in the shower of his work house, Rosa said, "Fuck you. I'll kill you." 6 RP at 799. In response, Fanning walked back to his other house, decided to walk back to his work house, and took his gun with him "just in case." 6 RP at 808. Although Rosa's statement was a threat of violence, there is no evidence at this initial juncture that Fanning feared imminent death or great personal injury because there is no evidence that he perceived a deadly weapon at this time. Accordingly, we conclude that Fanning fails to show that he was entitled to a justifiable homicide instruction predicated on a charge of residential burglary or burglary in the second degree.

Instead, the evidence of a perceived gun or a possible assault when Fanning returned to the work house elevated the residential burglary to burglary in the first degree. The instruction is appropriate if Fanning reasonably feared that Rosa was about to commit the felony of burglary in the first degree. Instruction 22, based on WPIC 16.03, informed the jury that Fanning was justified in using deadly force in the actual resistance of an attempt to commit a felony. Rosa had unlawfully broken into and remained in Fanning's home, threatened him, and Fanning believed that Rosa pointed a gun at him—the elements of burglary in the first degree.

There is no relevant difference between Fanning using deadly force because he reasonably feared that Rosa intended to shoot him (the assault or firearm would make the crime burglary in

the first degree) and using deadly force in active resistance of Rosa's attempted burglary in the first degree. The instructions allowed Fanning to argue his theory of the case.

Fanning argues that the cases relied on by the court to omit the language, *Brightman*, 155 Wn.2d 506, and *State v. Griffith*, 91 Wn.2d 572, 589 P.2d 799 (1979), are distinguishable on the facts. In *Brightman*, the defendant was charged with premeditated first degree intentional murder and in the alternative with first degree felony murder based on robbery after he allegedly killed the victim during a car theft. 155 Wn.2d at 509-11. The court, stating that a justifiable homicide instruction is only available when deadly force was necessary under the circumstances, concluded that the defendant was not entitled to the instruction because he admitted that he was not afraid of the victim. *Id*. at 513, 525-26.

In *Griffith*, the defendant shot a man standing on his doorstep who was requesting that the defendant return a basketball he had taken. 91 Wn.2d at 573-74. The defendant shot the victim after he had "mov[ed] toward him." *Id*. at 576. Based on these facts, the Supreme Court held that "the use of deadly force was unjustified as a matter of law." *Id*. at 576. It noted, "'In order to sustain this assignment [of error] we would be required to hold that a simple assault or ordinary battery would justify the taking of human life. We are not willing to stand sponsor for such a doctrine." *Id.* at 577 (quoting *State v. Churchill*, 52 Wash. 210, 224, 100 P. 309 (1909)).

Similarly, Fanning's argument is unconvincing. The court did not rely on the facts of *Griffith* and *Brightman*, but rather on the general legal principles put forth in those cases regarding the propriety of giving a justifiable homicide instruction. Specifically, that "'a killing in self-defense is not justified *unless* the attack on the defendant's person threatens life or great bodily harm.'" *Brightman*, 155 Wn.2d at 522 (quoting *Nyland*, 47 Wn.2d at 243). And, in deciding whether to give a proposed justifiable homicide instruction, the court engages in an "individualized

determination of necessity" and may determine as a matter of law that no evidence supported a necessity of using deadly force given the facts of the case. *Brightman*, 155 Wn.2d at 522-23. Moreover, unlike in *Griffith* and *Brightman*, the court here did not refuse to give an instruction on justifiable homicide, but rather tailored the instruction to ensure the applicable law was clear to the jury.

We hold that the court did not abuse its discretion by removing the "to commit a felony" language from the pattern instruction.

C.    Instruction 22 based on WPIC 16.03

Fanning argues that the trial court erred by redacting the portions of WPIC 16.03 referring to the right to resist an attempt to commit a felony in his presence or in a dwelling where he was present. He contends that the omission, coupled with the limitation of the definition of felony to burglary in the first degree did not allow him to argue his theory of the case and diluted the State's burden because it required the jury to find that he was actually resisting a felony solely upon his person without reference to resisting a felony on his dwelling.

The State asserts that because the facts, including Fanning's own trial testimony, did not support a claim that Fanning killed Rosa in self-defense in actual resistance of a felony committed in his presence or upon a dwelling in which he was present, the trial court did not err by omitting the corresponding language from its instruction.

The instructions to the jury must make the law of self-defense manifestly apparent to the average juror. *LeFaber*, 128 Wn.2d at 900. An instruction that Fanning was justified in killing Rosa because Rosa had attempted to commit a felony in Fanning's presence or upon or in a dwelling or other place of abode in which Fanning is present does not adequately convey the

requirement that in resisting the felony, Fanning had a reasonable apprehension of great bodily harm and imminent danger. It would be a misstatement of the law.

A felony upon or in the dwelling where Fanning is present is essentially residential or burglary in the second degree. And, as previously discussed, given the facts of the case, the court did not err in determining that resistance by deadly force to either of those felonies would have been, as a matter of law, unreasonable in this case. We hold that the court did not err in redacting that language.

IV.     PROPOSED INSTRUCTION BASED ON WPIC 60.05

Fanning argues that the trial court erred by not instructing the jury that it may infer criminal intent based on a person unlawfully entering or remaining in a building. Fanning asserts first that the State "has no standing to object to a jury instruction on the ground[s] that it creates an impermissible presumption" and second, because Rosa's actions were "unquestionably a completed burglary, not an attempted burglary" the court's reliance on *State v. Jackson*, 112 Wn.2d 867, 774 P.2d 1211 (1989), was misplaced. Br. of Appellant at 31. He appears to argue that because the instruction has previously been found to be constitutional, the court erred in not giving it.

The State argues that the relevant inquiry is whether the jury believed that Fanning reasonably believed that Rosa was a burglar, and thus it did not matter whether or not the jury believed Rosa was actually committing a burglary. The State also argues that any error in not giving this instruction was harmless, but in doing so entirely fails to explain why the error was harmless. Instead, it merely asserts that it was.

WPIC 60.05 is based on RCW 9A.52.040, which provides,

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

By its plain language, the statutory inference only applies "in any prosecution for burglary." RCW 9A.52.040. Rosa was not being prosecuted for burglary. Fanning presents no authority to support giving this instruction outside of a prosecution for burglary. Additionally, as argued by the State, it is irrelevant whether the jury believed that Rosa was committing a burglary because the claim of self-defense only requires that Fanning reasonably believed that Rosa was committing a burglary. Because the relevant inquiry is whether Fanning reasonably believed that Rosa was committing a burglary, the instruction pertains to an immaterial issue. Moreover, it would result in jury confusion and possibly amount to a comment on the evidence. The instruction is inapplicable, and we hold that the trial court did not err in declining to give this instruction.

V.     JUSTIFIABLE HOMICIDE AS APPLIED TO CHARGE OF MANSLAUGHTER

Fanning argues that the trial court erred by not instructing the jury that justifiable homicide is a defense for both murder and manslaughter.

The State argues that, because the evidence did not support a self-defense instruction for the lesser included offenses of manslaughter in the first or second degree, the trial court did not err by omitting that language. The State also argues that even if it was error to omit manslaughter in the justifiable homicide instruction, the error was harmless because the jury found Fanning guilty of murder in the second degree, and so found that he did not commit manslaughter.

The Supreme Court has clearly indicated that justifiable homicide and self-defense are defenses to manslaughter. *See State v. Hanton*, 94 Wn.2d 129, 133, 614 P.2d 1280 (1980) ("A person acting in self-defense cannot be acting recklessly as that term is defined in RCW 9A.08.010(1)(c). There can be no recklessness without disregard of risk of a wrongful act, and self-defense, as defined, is not 'wrongful.' Moreover, since self-defense is not wrongful, it cannot be 'a gross deviation from conduct that a reasonable man would exercise in the same situation.'") (holding modified by *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983)).[4] The trial court should have included manslaughter in the instruction for justifiable homicide and it erred in not doing so.

"'A jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial.'" *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997) (quoting *LeFaber*, 128 Wn.2d at 900). Because the error is presumed prejudicial, the defendant is entitled to a new trial unless the error can be declared harmless beyond a reasonable doubt. *Walden*, 131 Wn.2d at 478. "'An erroneous instruction is harmless if, from the record in [the] case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Carter*, 154 Wn.2d 71, 81, 109 P.3d 823 (2005) (quoting *State v. Brown*, 147 Wn.2d 330, 332, 58 P.3d 889 (2002)).

Even if the court had instructed the jury that self-defense is a defense to manslaughter, because the jury found Fanning guilty of murder in the second degree, it was not convinced Fanning was acting reasonably in self-defense. Such a finding was necessary to negate the

---

[4] Although in *State v. Camara*, the court declined to follow *Hanton* and *McCullum*, the court later expressly overruled *Camara*. 113 Wn.2d 631, 638, 781 P.2d 483 (1989), overruled by *State v. W.R., Jr.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). In any case, the issue in *Hanton*, *McCullum*, and *Camara* was not whether justifiable homicide is a defense to manslaughter but whether the State bears the burden to disprove self-defense.

recklessness that would be presented with a manslaughter instruction. We hold that it is evident from the record that the error was harmless beyond a reasonable doubt.

## CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, J

_____
Glasgow, A.C.J.